ALBERTA CONTRACTING CORPORATION, PROSECUTOR, v. FRANCESCO SANTOMASSIMO, AS ACTING VICE CONSUL OF ITALY, INTERVENING ON BEHALF OF FILOMENA VESPA AND BENJAMIN VESPA, DEFENDANT.

Submitted February 1, 1930—Decided June 20, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutor, *Frank G. Turner.*

For the defendant, *Whiting & Moore* (*Ira C. Moore, Jr.,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. The Alberta Contracting Corporation, the prosecutor of this writ, seeks to set aside the judgment of the Essex County Court of Common Pleas affirming an award by the workmen's compensation bureau to the petitioner on account of an injury to a workman resulting in death.

The material facts are not in dispute. Substantially they are as follows: Giuseppe Vespa, the decedent, was employed by the Alberta Contracting Corporation, as a laborer at its stone quarry at a place known as Beech Glen "in the woods," thirteen miles from Boonton. Decedent's work was to dig rock from the stone quarry and prepare it for the crusher. The employer used a number of trucks in hauling stone and rock; some of these trucks were owned by the employer, and some were not, but all were used in hauling stone in connection with the employer's work. There was no railroad or bus line running to Beech Glen from Boonton where the laborers, including the decedent, lived. The trucks, however, passed from Boonton to Beech Glen every morning and came back at night, and it was the custom of the laborers, including the decedent, to go to work on one of these trucks and return on one at night. The testimony does not disclose an express agreemeent between the decedent and the employer that he should adopt this mode of transportation to and from the work. It does show, however, that this was the only way of going to and from the work; that the men were ordered from time to time by the "boss" to take the last truck home, and that for sixteen months they continued to go to and from work in this way with the knowledge and acquiescence of the employer.

The witness, Nicholas Grieco, a fellow laborer with the decedent, testified in part as follows:

"*Q.* How did you and Vespa come home from work? *A.* The last truck that was leaving there at night was ordered by the boss to take us home. The court: How do you know the boss ordered that truck to take you home? *A.* As soon as the truck would get there the boss would stop him and tell him to take us home."

The witness further testified as follows:

"*Q.* You worked under a boss by the name of Joe, you say? *A.* Yes, sir. *Q.* Would he usually get to the place of work around seven o'clock in the morning, too? *A.* He lived right around there. *Q.* Would he be there when you got off the truck? *A.* Every morning except that morning in question. *Q.* Did he use to see you and Vespa and the other men get off the trucks in the morning? *A.* Yes, sir."

On August 13th, 1924, Giuseppe Vespa, the decedent, as was his custom, stopped the first truck going toward Beech Glen and got on it to go to work; he was accompanied by the witness, Nicholas Grieco. After they had gone a short distance the truck was stopped by one Mike Sigereto, the brother of the president of the Alberta Contracting Company, who was also employed by that company as foreman. Mike Sigereto was deaf and dumb. He signaled to Vespa to get up and let him have his seat, which Vespa did, Vespa taking a position on the running board and holding fast to the truck. The truck then started on its way and it had not gone far when Vespa was thrown from it and was killed.

The court below found, and we think rightly, that decedent's death arose out of and in the course of his employment. It was argued below, and is argued here, that such finding was erroneous because the decedent "was not engaged in his employment" while on his way to work.

As a general rule an injury suffered by an employe in going to or returning from the employer's premises where the work of his employment is carried on does not arise out of and in the course of his employment. *Fisher* v. *Tidewater Building Co.,* 96 *N. J. L.* 103; *affirmed,* 97 *Id.* 324.

Of course varying circumstances present exceptions to that rule. Thus in the above-mentioned Fisher case it is said that "where the workman is employed, to work at a certain place, and, as a part of his contract of employment, there is an agreement that his employer shall furnish him free transportation to and from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation, it is held to have arisen out of and in the course of the employment."

But the present case does not fall exactly within that exception, which, as seen, relates to cases where the transportation was pursuant to an express contract of employment.

The case at bar is one of an obligation to be implied from the conduct of the employer, and is much like the case of *Saba* v. *Pioneer Contracting Co.,* 103 *Conn.* 559.

We believe that the pertinent rule to be extracted from the cases is this: The relation of employer and employe continues while the employe is riding to and from his employer's premises, in a truck used in connection with his employer's work, by direction of his employer, with his knowledge and acquiescence in the continued practice, which was beneficial to both the employer and employe; and an injury sustained while so riding arises out of and in the course of his employment. See *Cicalese* v. *Lehigh Valley Railroad Co.,* 75 *N. J. L.* 897; *Depue* v. *Salmon Co.,* 92 *Id.* 550; *Dunbaden* v. *Castles Ice Cream Co.,* 103 *Id.* 427; *Bolos* v. *Trenton Fire Clay and Porcelain Co.,* 102 *Id.* 479; affirmed, 103 *Id.* 483.

The application of that rule demonstrates that the judgment below was right. The undisputed evidence was that the decedent rode to and from his work in the truck by the direction of the "boss" or foreman and continued to do so with the knowledge and acquiesence of his employer and in accordance with the latter's expectation. It shows that the employer arranged for such transportation of the decedent to and from his work for the benefit of both. Whether the truck upon which decedent rode when injured was owned by the employer is immaterial, since the trucks were all in use

in hauling stone in connection with the work, and sufficiently under the employer's control to permit of the carrying out of the arrangement for such transportation. The employer did not specifically contract with the decedent to transport him, but assumed the obligation to do so by directing the decedent and the other employes to ride on the trucks, and by knowledge of and acquiesence in the continued practice of the workmen so to ride for a period of sixteen months and until the accident in question. It is true that the actual employment of the decedent for stated pay did not begin until he arrived on the job and began work, but when he mounted the truck at the employer's direction to go to the job, in accord with his employer's expectation, he came within the zone of his employment as contemplated by his employer. The mere fact that his contract of employment did not call for pay for the time spent on the truck is immaterial in view of the facts of the case.

The judgment below will be affirmed, with costs.