GoLdsworthy and another, Appellants, vs. Industrial Commission and another, Respondents.

*September 13—October 10, 1933.*

For the appellants there was a brief by *H. W. Adams,* attorney, and *G. R. Wearing* of counsel, both of Beloit, and oral argument by *Mr. Adams.*

The *Attorney General* and *Mortimer Levitan,* assistant attorney general, for the respondent Industrial Commission.

For the respondent Schreiber there was a brief by *Fiedler, Garrigan & Grimm* of Beloit, and oral argument by *E. C. Fiedler.*

OWEN, J.   Edwin Schreiber, who was in the employ of William R. Goldsworthy, was killed on the morning of July 13, 1931, en route from his home in Beloit to his place of employment at Ridott, Illinois.   The Industrial Commission made an award to his widow, Lorraine Schreiber, which award was confirmed by the judgment of the circuit court, and the sole question presented here is whether at the time of the accident causing his death Schreiber was performing services growing out of and incidental to his employment.

Goldsworthy was a cement contractor with headquarters at Beloit.   For some time prior to the 13th day of July, 1931, he was engaged in building a concrete culvert at Ridott, Illinois, about thirty-seven miles distant from Beloit. He employed upon the job from eighteen to twenty-two men.   From eleven to fourteen of the men, including Schreiber, thus employed were from Beloit.   He maintained a camp at the job where the men were housed and fed.   The work's week started Monday morning and ended Saturday noon, at which time the men repaired to their various homes for the week-end.   The men thus employed were privileged to stay at the camp if they desired, but in such case they were obliged to cook their own food.   The record does not disclose that many of the men availed themselves of this privilege.   In fact there is nothing in the record to show that more than one man remained at the camp for two or three

Sundays, and then he did so for the purpose of doing some necessary work.

Goldsworthy ran one of his trucks from Ridott to Beloit each week-end, leaving Ridott Saturday afternoon and returning Sunday evening. It was usual and customary for a number of the men, including Schreiber, residing in Beloit, to ride in this truck in order to spend Sunday in their homes at Beloit. On Sunday evening July 13, 1931, Schreiber did not return in the truck, but accompanied a co-employee, who drove his own car to Ridott from Beloit. This was pursuant to an arrangement made between the two employees and by and with the knowledge and consent of Goldsworthy. The questions here involved are, (1) whether such transportation so furnished by Goldsworthy to the men residing in Beloit was an obligation resting upon him by virtue of the terms of the contract of employment or whether it was a mere gratuitous accommodation; and (2) if it was a contractual obligation, whether the fact that Schreiber rode in the car of a co-employee instead of in the truck affects the employer's obligation.

There is no question that where by the express terms of the contract of employment the employer engages to transport his employees to and from their place of employment, they are rendering services growing out of and incidental to their employment while being thus transported, and that they are entitled to compensation under statutes similar to ours where they sustain injuries during the course of such transportation. *Rock County v. Industrial Comm.* 185 Wis. 134, 200 N. W. 657; *Littler v. George A. Fuller Co.* 223 N. Y. 369, 119 N. E. 554; *Sala v. American S. T. Co.* 93 Conn. 82, 105 Atl. 346; *Geldnich v. Burg,* 202 Wis. 209, 231 N. W. 624.

In the instant case there is no contention that there was an express agreement between Goldsworthy and the deceased that Goldsworthy would transport the deceased to and from the work at the week-ends. However, such an

obligation may arise by inference or implication from the nature of the work and the conduct of the parties. Some of the cases so holding are *Donovan's Case,* 217 Mass. 76, 104 N. E. 431; *Saba v. Pioneer Contracting Co.* 103 Conn. 559, 131 Atl. 394; *Alberta Contracting Corp. v. Santomassimo,* 107 N. J. L. 7, 150 Atl. 830. This principle was perhaps recognized in *Western Fruit Co. v. Industrial Comm.* 206 Wis. 125, 238 N. W. 854. A review of these cases may be helpful in arriving at an understanding of the extent to which this principle has been applied.

Thus, in *Donovan's Case,* 217 Mass. 76, 104 N. E. 431, it appeared that Donovan was employed by McGreevey in cleaning out catch-basins at a place about two miles from his home. It had been and was his custom, in common with other employees and with the knowledge and consent of his employer, to ride to and from the vicinity of the catch-basins in a wagon furnished by his employer, the wagon meeting the employees on the street and the employer being notified if any of the employees failed to report for work at the beginning of the day. The wagon was at the service of the employees at the end of the day, and they might ride in it back to the employer's barn if they wished. Donovan was injured while so riding in this wagon at the end of his day's work, and it was held that his transportation on the wagon was incidental to his employment and arose out of and in the course of said employment. In so concluding, the court followed recent English decisions, from which it concluded that "the rule has been established, as we consider in accordance with sound reason, that the employer's liability in such cases depends upon whether the conveyance has been provided by him, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of that contract. . . . Whatever has been uniformly done in the

execution of such a contract by both of the parties to it well may be regarded as having been adopted by them as one of its terms. Especially is this so where none of the provisions of the contract has been shown by either party, but everything is left to be inferred from their conduct."

In *Saba v. Pioneer Contracting Co.* 103 Conn. 559, 131 N. E. 394, the deceased employee had been employed for the improvement of a public highway about six miles from where the deceased resided. The deceased, with other employees, was instructed by the employer to meet a truck at a designated place within the city where defendant resided, to be taken to the place of work. It was thereafter the custom of the workmen living in that neighborhood to appear at the designated place and ride to the place of employment on that motor truck. While riding on such motor truck the deceased met with an accident causing his death. The court held that while the employer did not specifically contract with the workmen to transport them, it assumed the obligation to transport them, by directing the deceased and other employees to ride on this truck, and by its knowledge of the continued practice of the workmen so to ride and not interrupting it. The award of compensation was sustained by the court even though the pay of the workmen did not begin until they arrived on the job and began work, the court saying that "when an employee mounted the truck at the employer's direction to go to the job, in accord with the employer's contemplation of what his conduct would be in going to the place of the job, he came within the zone of his employment as contemplated by his employer. The mere fact that the time spent on the truck was not time for which, by his contract of employment, he was paid for, is immaterial in view of the facts found."

In *Alberta Contracting Corp. v. Santomassimo,* 107 N. J. L. 7, 150 Atl. 830, it appeared that the decedent was employed by the Alberta Contracting Corporation as a laborer at its stone quarry at a place known as Beech Glen in the

woods thirteen miles from Boonton, where the decedent and many other employees at the stone quarry resided. There was no railroad or bus line running from Beech Glen to Boonton. The employer, however, used a number of trucks in hauling stone which passed from Boonton to Beech Glen every morning and returned at night. It was the custom of the employees, including decedent, to go to work on one of these trucks in the morning and return on one at night. The testimony did not disclose an express agreement between decedent and the employer that he could adopt this mode of transportation from and to his work, but it did show that this was the only way of going to and from the work, that the men were ordered from time to time by the boss to take the last truck home, and that for sixteen months they continued to go to and from work in this way with the knowledge and acquiescence of the employer. An award of compensation was sustained, the court saying: "We believe that the pertinent rule to be extracted from the cases is this: The relation of employer and employee continues while the employee is riding to and from his employer's premises, in a truck used in connection with his employer's work, by direction of his employer, with his knowledge and acquiescence in the continued practice, which was beneficial to both the employer and employee; and an injury sustained while so riding arises out of and in the course of his employment." We are not disposed to quarrel with the principle of these cases. It is supported not only by respectable authority but by reason as well.

But the question we have to consider is whether under the facts of this case the Industrial Commission could infer from all the circumstances a contractual obligation on the part of Goldsworthy to transport his employees from Ridott to Beloit and back each week-end. While it was said in *Western Fruit Co. v. Industrial Comm.* 206 Wis. 125, at p. 128, 238 N. W. 854, that the obligation of the company to take the women home is a conclusion of law from the

facts, we do not think that is applicable to the present situation. In *Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452, it was said that "Whether a finding is an ultimate fact or conclusion of law depends upon whether it is reached by natural reasoning or by the application of fixed rules of law." Our problem is to ascertain what the contract between the parties was. Its solution depends clearly upon natural reasoning rather than the application of fixed rules of law, and the ultimate conclusion to be reached is one of fact rather than of law. In other words, the ultimate conclusion must rest upon inferences permissible from established facts. Findings based on such inferences are findings of fact. *Porter v. Industrial Comm.* 173 Wis. 267, 181 N. W. 317.

The facts so established are these: Schreiber had been employed off and on by Goldsworthy, whose headquarters were at Beloit, for a period of about three years. His employment had been by the day whenever Goldsworthy had work for him. It appears that in the prosecution of Goldsworthy's business he sometimes had work at some distance from Beloit. In such cases he furnished his employees residing in Beloit with transportation, morning and night, to and from the place of their work. It appears that when he was securing men to go to Ridott he was asked, in the presence of four or five prospective employees, how they would get back home at the week-end, and he replied in effect that his truck would be making the trip, and such of the men as so desired could ride in the truck. However, it does not appear that Schreiber was one of the men to whom this statement was made, neither does it appear that he was not. No one seemed to know whether he was present when this statement was made. Testifying on this subject Goldsworthy said:

"Some of the men took their own cars to get down to the job, and some went in my truck, and some in my car. I did

tell some of the men, I don't recollect which ones, that I would see to it that they got back and forth; that there would always be a truck coming back on Saturday night and back down on Sunday night. It was pretty well understood amongst the men, but I didn't tell them all. There were four or five, but I don't remember which ones they were. Their wages started on Monday morning at Ridott, and stopped Saturday afternoon or night. As to the men who took their own cars, they didn't get any more pay because they drove or took their own car. . . . I couldn't say whether Schreiber was one of the four or five who was there the morning I made arrangements to go back and forth or not. I promised them and I generally live up to my promises. Of course, it was always understood that wherever I went out in the country on a job, I would always bring the men back at night in the truck and see that they got on the job the next morning. On those occasions I didn't have a camp, I would go and come."

This excerpt from Goldsworthy's evidence pretty clearly indicates the uncontradicted testimony taken before the commission. From this it appears that the employees would be assured of some means of getting back home Saturday night. It is a fair inference that this was generally understood by all the employees residing in Beloit. It appears, also, however, that not all the employees availed themselves of this means of transportation. Some took their own cars and, as already stated, Schreiber was injured while riding down to the work in a car of another employee. However, our fundamental inquiry is whether he had a right to transportation by his employer. Only in case that be determined in the affirmative, shall we be called upon to consider the consequences of his riding in the car of his co-employee.

The Industrial Commission could properly find that a custom existed by which Goldsworthy undertook to furnish transportation to the Beloit employees from and to the place of employment at the week-end. The only question is whether such transportation was furnished by Goldsworthy

pursuant to a contractual obligation or as a mere accommodation to the employees and as a mere inducement to them to enter the employment. There is a manifest difference between the furnishing of transportation to and from a place of employment daily and that furnished here, weekly. Men must have shelter and a place to sleep. This consideration no doubt influenced the decision in *Holt Lumber Co. v. Industrial Comm.* 168 Wis. 381, 170 N. W. 366, holding that where an employee in a lumber camp was infected by a straw falling from the bunk above in the camp where he was maintained by the employer, the injury was incidental to his employment. Where a contractor has his works out in the country so far distant from the center of population that some form of transportation is necessary in order to get men upon the works, and the contractor assumes to furnish such transportation, as was the situation in the cases heretofore reviewed, notably *Alberta Contracting Corp. v. Santomassimo,* 107 N. J. L. 7, 150 Atl. 830, the inference that such transportation is furnished pursuant to the contract may be indulged. But here the employees were maintained in a camp established at the works. They were privileged to stay in the camp over Sunday if they so desired, but they chose to return to their homes at the week-end and spend Sunday with their families. The gratification of this desire was not at all necessary for the prosecution of the employer's business. The transportation from the camp to their homes was merely for the purpose of enabling the employees to spend Sunday with their families. It will not be so readily inferred (if the inference be permissible at all) that the transportation furnished by the employer under such circumstances was in the discharge of a contractual obligation, because the occasion therefor did not arise from the necessities of the employment. It was merely for the gratification of the employees. If of degree and the inference permissible, then the finding of the Industrial Commission

should not be disturbed. If on the other hand the difference is one in character, fundamental in its nature, we may determine whether such an inference is permissible.

The transportation so furnished was not in any manner a necessity for the prosecution of the employer's business. Not all of his employees came from Beloit, and there is no suggestion in the record that transportation was furnished to any except Beloit employees. Neither does it appear that it was in any wise necessary for him to recruit his crew from Beloit. Neither was it necessary in order to enable the employees to return to their home. It appears from the record that there was bus and other transportation from Beloit to points in convenient proximity to the camp. It also appears that although the employer's truck was available for transportation, some of the employees went back and forth in their own cars. For this they received no extra compensation. Their compensation started when they entered upon their work Monday morning and stopped when they ceased work on Saturday. In view of all these facts and circumstances, it appears an unwarranted inference that the transportation in this case was furnished by the employer in the discharge of a contractual obligation. It seems plain that it was a mere gratuitous service and but added another to the various modes by which the works or place of employment could be reached. We conclude, therefore, that at the time of the injury resulting in his death Schreiber was rendering no service incidental to or growing out of his employment, and that the award of compensation is without support.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment vacating the award of the Industrial Commission.