BURROWS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided April 4, 1938.)

*Messrs. Holloway, Peppers & Romanoff,* for appellee.

*Mr. Herbert S. Duffy,* attorney general, and *Mr. Eugene Carlin,* for appellant.

OVERMYER, J. This is a workmen's compensation case for a death award, and in Common Pleas Court the claimant recovered a verdict in which nine jurors concurred and upon which judgment was entered, which judgment the Industrial Commission is seeking here to reverse and secure a final judgment in its favor. The errors assigned are the failure of the court to sustain the motions for directed verdict, admission and rejection of certain evidence, and error in the charge.

The question confronting the court as to whether the trial court should have directed a verdict for the commission is based upon the defense that the injuries suffered by claimant's decedent resulting in his death were not sustained in the course of his employment

and did not arise out of that employment. This will be discussed.

The appellee, Laura Burrows, was the wife of C. V. Burrows, in July, 1933, and brings this action as his widow on behalf of herself and two minor children by a former marriage. On July 29, 1933, Burrows was driving alone from Cleveland, Ohio, to Toledo, Ohio, in his automobile, and while on state highway No. 102 in Wood county, Ohio, he collided with another automobile and received injuries which caused his death the next day. The amenability and compliance of the employer with the Workmen's Compensation Law, the accident, injuries and death, are admitted.

At the time above mentioned, C. V. Burrows, whose home was in Toledo, was employed in the capacity of branch manager and was soliciting work in that area at the Cleveland terminal office of his employer, The Federal Express, Inc., engaged in the general business of long distance hauling of freight by motor carriage, with its principal offices at Toledo, Ohio. Burrows previously had been employed by that company as its traffic manager at the general office in Toledo in charge of rates and tariffs. He had been transferred to Cleveland about sixty days before his death and on week ends usually drove from Cleveland to Toledo to spend Sunday with his fiancee, whom he married on July 22, 1933, six days before his death. Claimant contends that on these week end trips Burrows also transacted company business at the Toledo general offices, and that he was on his way to the Toledo general offices on some company business on Saturday, July 29, 1933, at about 5:10 p. m., when the accident happened.

The secretary of the hospital to which the injured man was removed within twenty minutes after the accident, testified that she found on his person $25 in

money and a check on The Toledo Trust Company payable to C. V. Burrows, and that he stated to her that they belonged to The Federal Express, Inc., his employer, and that he directed her to turn them over to that company, which was later done and the receipt of the company for the same is in evidence. The physician who gave the patient first aid and treatment immediately after he arrived in the hospital, testified that the patient told him in giving the history "that he was injured along the border of Wood and Lucas county line, in Wood county; that he was on his way home from Cleveland to the office here in Toledo of The Federal Express, Inc.; that he had some money or funds or checks that he was delivering to his office. * * * He requested to call a man by the name of Secoy (manager of The Federal Express, Inc.) to come over to the hospital and get his papers, checks and funds and to see that no one else got these but Mr. Secoy. * * * I was present when this property was taken from his possession."

It was the foregoing testimony of these two witnesses that was objected to by the commission. However, giving full credence to this testimony, whether competent or not, the same could not affect the ultimate conclusion which we think is inevitable.

The claimant, Laura Burrows, testified that the decedent lived at her home a year or more before their marriage, and after the time of his transfer to Cleveland, he came to Toledo "possibly four or five week ends," and that she went with decedent to his employer's offices on Saturday evenings and Sundays four or five times, and saw him "making up tariff rates, filling out reports, and of course I would see his work as I see you here. * * * Not every word as it was written down. I knew it was reports to the company, tariffs and rates and other papers he was turning in every week end. * * * He usually came in late Sat-

urday evening and he would go over there, it would be as late as eleven or eleven-thirty, turn in his records and then he would work there on Sundays in the office.''

She also testified that they were married on July 22, 1933, at Erie, Pennsylvania, and that on that two-day trip the decedent solicited business for his employer at Erie, Pennsylvania, and Buffalo, New York.

The bookkeeper of the employer company testified that during the time of decèdent's service in Cleveland the decedent made week end trips to the company offices in Toledo, and that he would say that on at least some of those occasions the decedent would bring in cash or checks or reports.

In connection with claimant's case, there were introduced in evidence two letters written by the decedent from Cleveland to the employer company at Toledo, one dated July 7, 1933, three weeks before decedent's death, the other dated July 26, 1933, three days before his death. In the former, addressed to Mr. Secoy, the manager, he said:

''Since it is probable 1 will not get an opportunity to talk to you Sunday, I will give you a brief resume of the Cleveland situation as it has appeared for the past week. * * * I hope you may be in the office some time Sunday if possible in order that I can go over the list of firms I have called on. I have a list of about sixty firms, both new customers and old, that will look very promising to you, I am sure. * * * As I said before, I would like to go over the entire situation with you Sunday if possible while there.''

In the last letter, addressed to the bookkeeper at Toledo, he said:

''I rather expect to see you some time Sunday morning, but as I am not really sure, will you please let my check come along to Cleveland,'' etc.

Another note in evidence, dated July 7, 1933, to the tariff manager at the Toledo offices, written by dece-

dent, relates to business matters and closes with the statement: "See you Sunday."

This is all the testimony pertinent to the issues made upon which claimant bases her right to recover. No evidence was offered by the commission.

Opposed to the foregoing various items of evidence upon which plaintiff's claims are based, the commission relies for its defense largely upon the testimony of Mr. Secoy, the manager at the time of trial, and in July, 1933, one of the receivers of the employer company, who was called by claimant. He testifies that decedent had no work to do in connection with tariffs and rates at the Toledo offices after his transfer to Cleveland; that his duties did not require him to bring reports, funds or checks to the Toledo offices on week ends or do any other work at the Toledo offices, and that his duties were confined to the Cleveland area; that the only times the decedent was required to come to the Toledo offices were when he was notified by letter to do so and on such occasions his expenses were paid, and that he had not been so notified to come on the occasion when he was injured. He states that decedent, on other week ends after his transfer to Cleveland, had not been called to come to the Toledo offices. He further stated that decedent's hours, while not fixed, ordinarily ended at noon on Saturdays in Cleveland, and that the company paid the expenses of operating defendant's automobile only while on business in the Cleveland area or when called to the home office by letter. Further he stated as follows:

"Q. You do not recall whether or not Mr. Burrows had any property belonging to the company in his possession? A. At the time I understand there were some tariffs in his car, which he naturally would carry at all times, due to the fact you use them in solicitations, and he may have had other records in the car bringing them in at the time, due to the fact he was coming to the home office, as to that * * *."

"Q. He was coming into the home office? A. He evidently was, but not by request, understand."

An examination of the record clearly discloses that decedent's week end trips from Cleveland to Toledo, his home, were primarily made to get to his home and to see his fiancee, and on the last trip to see his bride of a week. It is further apparent from the evidence that whatever correspondence he had as to his coming to the home offices on those trips, and whatever work he there may have done was all voluntary on his part and not a part of his contract of hire or a part of the obligations of his employment. He could, of course, combine company business with personal business, but the test of compensability in such cases is, which of the two took him on the journey? Which of the two created the necessity for travel on the occasion in question? Would he have made this journey if his home and bride had not been in Toledo? His employer and manager says very positively that his duties in no manner required him to come to Toledo unless he was sent for, and that he had not been sent for, and there is no other evidence on behalf of claimant to show that "his injuries resulted from the work he was *employed to perform*," as said in *Industrial Commission* v. *Bateman*, 126 Ohio St., 279, 185 N. E., 50; or "an injury sustained in the performance of *some required duty*," as stated in *Industrial Commission* v. *Ahern*, 119 Ohio St., 41, 162 N. E., 272, 59 A. L. R., 367; or that "When killed, he was in the performance of *a duty enjoined upon him by his employment*," as stated in *Standard Oil Co.* v. *Clark*, 44 Ohio App. (Sixth District), 211, 184 N. E., 861; or that "her injury was occasioned while she was in the *actual* discharge of any *duty* under her contract of employment," as stated in *Industrial Commission* v. *Gintert*, 128 Ohio St., 129, at 132, 190 N. E., 400, 92 A. L. R., 1032. (Italics ours.)

We shall quote further from the case last cited, for

it appears to be the last word of the Supreme Court on the subject, as follows:

"The Constitution and the statute, providing for compensation from a fund created by assessments upon the industry itself, contemplate only *those hazards* to be encountered by the employee in the discharge of the *duties* of his employment, and do not embrace *risks and hazards,* such as those of travel to and from his place of *actual* employment over streets and highways, which are similarly encountered by the public generally." (Italics ours.)

We are unanimously of the opinion that the claimant did not sustain the burden resting upon her of proving that the injuries to her husband were suffered in the course of and arising out of his employment for which his employer was contributing to the Workmen's Compensation Fund, and that the trial court erred in not sustaining the motion of the commission for a directed verdict. In support of this view, in addition to the authorities above cited, we refer to *Industrial Commission* v. *Wiegandt,* 102 Ohio St., 1, 130 N. E., 38; *Fassig* v. *State, ex rel.,* 95 Ohio St., 232, 116 N. E., 104; *Industrial Commission* v. *Lewis,* 125 Ohio St., 296, 181 N. E., 136; *Highway Oil Co.* v. *State, ex rel. Bricker, Atty. Genl.,* 130 Ohio St., 175, 198 N. E., 276; *Marks* v. *Gray,* 251 N. Y., 90, 92, 167 N. E., 181.

The judgment of the trial court will be reversed and final judgment directed for the Industrial Commission. The other alleged errors become immaterial.

*Judgment reversed and final judgment for appellant.*

Lloyd and Carpenter, JJ., concur.