# MARGARET FOX v. ATWOOD-LARSON COMPANY AND ANOTHER.[1]

July 8, 1938.

No. 31,628.

*Edgerton, Green & Edgerton,* for relator.
*G. P. Mahoney,* for respondent insurer.

LORING, JUSTICE.

This case comes here on a writ of *certiorari* to review a decision disallowing compensation to the petitioner-relator. The relator is the widow of Ernest Fox, who died as the result of an automobile accident October 11, 1935. He was an employe of the Atwood-Larson Company, a grain commission house with its headquarters at Duluth, Minnesota. He had been employed as a fieldman by that company for a number of years, traveling from point to point meeting farmers at their annual meetings and advising them in a general way. His territory covered the Red River Valley in Minne-

[1]Reported in 280 N. W. 856.

sota and North Dakota and extended to the southern part of Otter Tail county in Minnesota. It extended eastward to include the village of Perham in that county. His home and office were at Grand Forks, North Dakota, and his duties were left largely to his own discretion since he had no regular route or schedule of travel. In the fall of 1935 he arranged with his employer to take a vacation at Winona, Minnesota, where one of his daughters lived. He left Grand Forks in the forenoon of October 2 and called on customers of his employer at various points on his route within his territory and arrived at Little Falls on that evening, where he made a report to the company as to the work he had done on that day. On the morning of the third he left Little Falls and went to Winona, where he stayed until the morning of the 11th. While he was at Winona he wrote some letters to the company commenting upon certain accounts, and he received some correspondence from the company. In particular he commented upon an account of Herb Christianson at Vining, Minnesota. Vining is a small place about 20 miles south of the hamlet of Ottertail, which Fox used as his headquarters in that part of his territory. Fox's comment on the Christianson account resulted in a letter from the Duluth headquarters to Mr. Christianson, copy of which was sent to Mr. Fox. This letter from the Duluth headquarters to Christianson discussed the Christianson indebtedness to the company which amounted to $2,600, commented upon the fact that they had received but two cars of grain on the 1935 crop, and asked for a report of his grain on hand and said: "We also wish to impress upon you the necessity of shipping your grain just as fast as carload lots are accumulated. Be sure to send in this special report promptly." Mr. Atwood testified that upon receipt of such an inclosure he would expect Fox at the earliest possible moment to call on the debtor and check up on the facts and that it was his duty to do so in the regular course of his employment. He stated further in regard to this Vining account that it was Fox's duty to see that this man Christianson either shipped the grain or sent the money in. On the morning of October 11 Fox and his daughter left Winona with the announced

purpose of going to Ottertail and Vining. His daughter, who was with him, wanted to go by way of the Sauk Center road to make a call, but Fox refused to do this, saying that he did not know the road so well after dark and that he wanted to get to Ottertail that evening. Just after passing Big Lake, Fox's car was sideswiped by a truck and he was killed. His widow and sole dependent petitioned for compensation under the workmen's compensation act, and the industrial commission denied the compensation for the reason that the injury to Fox which resulted in his death did not arise out of and in the course of the employment by the Atwood-Larson Company. The sole question presented by the writ of *certiorari* is whether or not the commission erred in so finding. The facts are undisputed, and it appears to us that reasonable men could not differ as to the inferences to be drawn from those facts. The injury to Fox occurred outside of the territory in which he had a roving commission and while he was on a return journey to his territory from Winona, where he had been spending his vacation. If there were no other facts in the record the decision of the industrial commission would be right. Does the fact that his employer had written him at Winona inclosing a copy of the letter which it had written to Christianson change the situation? The letter to Mr. Christianson from the Duluth headquarters of the company, a copy of which was sent to Mr. Fox, was dated October 7 and was evidently received by Fox on the 9th, and he arranged to leave on the morning of the 11th to go directly to Ottertail and Vining. After reading this letter into the record, counsel asked Mr. Atwood, president of the company:

Q. "Now, Mr. Atwood, in the course of your business and in the course of Mr. Fox's dealings with you, as fieldman, upon receipt of a statement, such as exhibit I, showing the state of this Vining account on September 30 and the correspondence which has been read here, in the ordinary course of his duties, what was Mr. Fox's duties so far as the Vining account was concerned? * * *

A. "I would certainly expect him at the earliest possible moment to call there and check up on the fact. * * *

Q. "And was that his duty under the course of his employment with you—* * * in the regular course of his employment?

A. "Yes, sir."

On cross-examination Mr. Atwood was asked:

Q. "You didn't tell Mr. Fox in this letter to call?

A. "I didn't have to, he is an intelligent man."

He further testified:

Q. "Was it part of Mr. Fox's duty to see to it that customers shipped in the grain against which they had drawn drafts—was it part of Mr. Fox's duty to see that customers in his territory shipped grain against which they had drawn drafts?

A. "He was supposed to check the account and see whether they had grain for the money paid out.

Q. "With reference to this Vining account, was it part of his duty to see that this man Christianson shipped grain to get his account down? * * *

A. "It was his duty to see that they either shipped the grain or sent the money in."

In legal effect, then, the sending of the copy of the Christianson letter to Fox at Winona was equivalent to a specific direction to go directly to Vining and to ascertain the amount of grain that Christianson had on hand and get him either to ship the grain or to reduce his obligations with cash. We think no other reasonable inference could be drawn from the testimony of Mr. Atwood which is undisputed. There were a number of routes from Winona to Grand Forks which Fox might have chosen. Ottertail was near, but not directly on, one of the most direct. He took a route that would enable him to comply with his employer's instructions. Those instructions and the employer's work in connection therewith were, as we regard them, at least a concurrent cause of the journey. True, Fox served a purpose of his own in returning to his territory, but he also served his employer's urgent business in journeying to Ottertail, his announced objective. His work served a material part in creating the necessity for the journey. Wherever he was, within

reasonable distance of Ottertail, it was his duty to go there upon receipt of the letter. Had he been spending his vacation in northern Wisconsin and there received the letter and had he gone to Ottertail and been killed on the way, no one would have been likely to contend that he was not in the course of his employment. That one of the direct routes to Grand Forks coincided with that to Ottertail should not change the legal effect of his instructions. Irwin-Neisler & Co. v. Industrial Comm. 346 Ill. 89, 178 N. E. 357; Kennedy-Van Saun Mfg. & Eng. Corp. v. Industrial Comm. 355 Ill. 519, 189 N. E. 916; In re Marks v. Gray, 251 N. Y. 90, 167 N. E. 181; In re Bennett v. Marine Works, Inc. 273 N. Y. 429, 7 N. E. (2d) 847.

The decision of the industrial commission is reversed with directions to enter an award to the petitioner, who is allowed $100 attorneys' fees in addition to statutory costs and disbursements.