# JOHN B. JOHNSON v. CRANE COMPANY OF MINNESOTA AND ANOTHER.[1]

June 27, 1941.

No. 32,773.

*C. E. Warner,* for relators.
*John O. Loeffler,* for respondent.

PETERSON, JUSTICE.

*Certiorari* to the industrial commission to review an award in favor of the respondent-employe.

The employe was injured as the result of a collision between a train and his automobile shortly after 1:00 a. m. on December 1, 1938. The question for decision is whether or not the injury arose in the course of the employer's business.

The employe was a traveling salesman. He traveled in an automobile furnished by the employer. He laid out his own routes and had no definite working hours. The employer's sales manager testified that "it is more or less left to their [the salesmen's] discretion as to how much it is necessary for them to work in order to turn in the volume of business that they are required to give us during the course of a year."

[1]Reported in 299 N. W. 19.

About two weeks prior to the accident the employe had taken an order for some pipes from one McHardy at Bay City, Wisconsin, to be used in a sand drier. He wrote the order for pipes with "right-hand" threads. Afterwards it was decided to change the order to specify "right- and left-hand" threads. This was in the customer's interest. Before threading the pipes it was deemed advisable, if not necessary, to obtain the customer's consent to the change in the order specifications.

On the morning of November 30, the employe started on a business trip from Minneapolis which took him into that part of Minnesota across the Mississippi River from Bay City. He was in Red Wing, where he called on the trade. He registered at a hotel there for the night. During the evening he visited with two customers, one Charles Nelson and one Oscar Nelson, at their homes. At the Charles Nelson residence he stated that he intended to go to Bay City. He left the Oscar Nelson residence at about 9:30 p. m. and said that he was going back to the hotel.

At any rate, he proceeded, after leaving the Oscar Nelson home, directly to Bay City to confer with McHardy concerning the change in the pipe threads. McHardy was not home. The employe talked with McHardy's brother, who informed him that McHardy had gone to Hager City, a small village in Wisconsin across the river from Red Wing, to purchase oil. It was then about 11:00 p. m. The employe proceeded to Hager City in search of McHardy, but failed to find him. He then went to a tavern to answer a call of nature. It was then about midnight. There he met a waitress of whom he had made inquiry at another tavern concerning McHardy's whereabouts. It being "mulligan night," he visited with her and her party and had some beer and mulligan. He left the tavern at about 1:00 a. m. He drove in the direction of Bay City to leave a note at McHardy's place of business that he would call on him the next morning concerning the change in the pipe threads. He testified that he had employed this method

of making appointments with customers in former instances. Enroute he crossed the railroad tracks where the collision occurred.

The employe testified, and he was not contradicted, that it was urgent that he should see McHardy that night, and, having failed to see him, that he should arrange an appointment to see him the next morning to advise him of the changes in the pipe threads, for the reason that one or the other of the times mentioned were the only opportunities he had to see McHardy before the employer threaded the pipes. Because he was one day late, the employe shortened this trip in such a way that if he did not see McHardy that night or the next morning he could not see him at all. After the next morning his business would have taken him away from the vicinity of Bay City.

On the trip to Bay City and return and at Hager City the employe stopped at some beer taverns. The testimony is that he was sober.

An accidental injury to an employe resulting from a collision while driving an automobile furnished by the employer to be used by the employe in prosecuting the employer's business occurs in the usual course of the employment when it happens during the usual hours thereof and where the employment requires the services to be performed. Henry v. D. A. Odell Motor Car Co. 191 Minn. 92, 253 N. W. 110. Travel by an employe and its incidental risks are in the course of the employment where the employment creates the necessity for such travel. Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 282 N. W. 801.

The evidence sustains the findings on which the award is based.

It is undisputed that the employer furnished the automobile which the employe was driving to enable him to perform his duties as a traveling salesman. Obtaining McHardy's approval of the change in his order concerning the threads on the pipes was part of the employe's work. The travel during which the collision occurred was for the purpose of obtaining such approval. Travel at night was necessary because of the exigencies of the employe's

arrangement of the trip which he was then making. He had no regular working hours. His usual hours of employment were those during which he was prosecuting his employer's business. If it be conceded that the employe stepped aside from his business to visit the several taverns, the fact is that he returned to his duties and was acting in the course of his employment when he was injured. The findings of the industrial commission on disputed questions of fact will not be disturbed unless consideration of the evidence and permissible inferences therefrom require reasonable minds to adopt contrary conclusions. Jeffers v. Borgen Chevrolet Co. 199 Minn. 348, 272 N. W. 172.

The respondent is allowed $75 attorney's fees in addition to the regular taxable costs and disbursements.

The writ of *certiorari* is discharged and the order affirmed.

STONE, JUSTICE (dissenting).

The evidence is, to me, in such manifest and overwhelming preponderance against the award that I cannot concur in its affirmance. The least we should do, in my judgment, is to remand for a rehearing.