## ALICE CAVILLA v. NORTHERN STATES POWER COMPANY AND ANOTHER.[1]

December 4, 1942.

No. 33,198.

[1]Reported in 6 N. W. (2d) 812.

*Lystad, Mantor & Strauman* and *Weyl & Weyl,* for relators.
*John A. Goldie* and *Samuel I. Sigal,* for respondent.
*George L. Siegel* filed a brief *amici curiae* on behalf of Minneapolis Building Trades Council, St. Paul Building Trades Council, International Brotherhood of Electrical Workers, Local B-160, and International Brotherhood of Electrical Workers, Local B-23.

PETERSON, JUSTICE.

The question in this compensation case, where an award of compensation was made to the deceased employe's dependents, is whether or not the employe's death arose out of and in the course of his employment.

The deceased was a member of a crew of employes, who lived in Minneapolis and St. Paul, sent by the employer from its headquarters in Minneapolis to Tracy, about 160 miles distant, to make certain changes and improvements in its substation located there. While the record is not explicit on the point, it is apparent that the parties contemplated that the work at Tracy required several weeks for its performance.

The employe's service was rendered under a written contract between the International Brotherhood of Electrical Workers and the employer. It is a rather lengthy document, filling a booklet of 23 printed pages, and governs in great detail the relations between the employer and the local union, of which deceased was a member, and all matters relating to hours of work, pay, expense allowances, and working conditions. It was executed January 1, 1940, and was to continue in effect until April 30, 1941.

So far as here material, the contract provided that the workday should be eight hours, from 8:00 a. m. to 5:00 p. m. with an hour for lunch, or from 8:00 a. m. to 4:30 p. m. with one-half hour for lunch; that each week employes should work five days, from Mon-

day to Friday, inclusive, and that on out-of-town jobs, as here, so far distant as to make impracticable daily travel back and forth between the employes' homes and the job, the employer would furnish transportation to the work before it began and to their homes after the work was completed and, in addition, would pay the employes a stated sum for living expenses graduated downward from $16 to $9 per week depending upon the length of service on the job. While the work week consisted of five days, the subsistence and expense allowance was computed on a seven-day-week basis so as to include Saturday and Sunday, on which the men did not work.

The contract was entirely silent as to the time when the men were not employed. During their time off the men were not subject to the employer's control, and their time was their own to do with as they pleased so far as the employer was concerned. Absent was any provision obligating the employer to furnish its employes with transportation home on week ends or to pay the expenses of such trips. The employes often took week-end trips to their homes in their own automobiles at their own expense.

Work on the job at Tracy began on Monday morning, November 4, 1940. The following Monday was Armistice Day. Because the week-end holiday over Armistice Day consisted of three full days, deceased and some other employes planned to return to their homes over the week end. With the consent of the employer, they so arranged their working hours during the week that they got in a full week's work one hour before the regular quitting time on Friday, November 8.

In every instance, including the case at bar, where the employer consented to an arrangement of working hours so as to facilitate earlier departure on such trips than the regular quitting hour, the parties obtained the consent of the union's steward on the job, lest such arrangement involve a violation of the provisions of the contract between the employer and the International Union relating to working hours.

After work on Friday, the deceased and two other employes left Tracy for their homes in the automobile of a coemploye, Edward Bantle. They intended to return to Tracy to resume work on Tuesday morning, November 12.

The purpose of the trip was to enable the employes to spend the week end at their homes with their families. It was not made to perform any duty to or to render any service for the employer. The employer did not have any control over the employes while they were on the trip. It did not specify the route they were to take.

En route the men stopped for supper. They then resumed travel, and when they reached a point about 115 miles distant from Tracy (six miles southwest of Glencoe) the automobile in which they were riding had a head-on collision with an automobile truck, with the result that the deceased and another employe were killed.

The commission awarded compensation upon findings that the accident arose out of and in the course of the employment upon the theory that the deceased was a traveling employe whose employment included as an incident thereof week-end trips home, which subjected him to road risks of the kind which caused his death, and that, aside from the employe's status as a traveling employe, the trip was by custom an incident of the employment.

The findings of the commission are assailed here by relator as utterly lacking in support in the evidence.

■ The workmen's compensation act provides that an employer shall be liable to "pay compensation in every case of personal injury of his employee, caused by accident arising out of and in the course of the employee's employment," Minn. St. 1941, § 176.02 (Mason St. 1940 Supp. § 4272-1), and that, without otherwise affecting the meaning or interpretation thereof, the expression "arising out of and in the course of employment" is declared "not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen;

provided, that where the employer regularly furnishes transportation to his employees to or from the place of employment, such employees shall be held to be subject to this chapter while being so transported," *Id.* § 176.01, subd. 11 (Mason St. 1927, § 4326[j]).

No claim is made, and the evidence does not sustain a finding, that the employer furnished transportation on the trip in question. Hence, there could be no liability under the proviso that where the employer regularly furnishes transportation to his employes to and from the place of employment such employes shall be covered by the workmen's compensation act. The contention of respondent is that the travel in question arose out of and in the course of decedent's employment as a necessary incident thereof.

In reviewing the findings of the commission we apply the well settled and oft reiterated rule that a finding of the industrial commission reasonably supported by the evidence, either by direct testimonial statement or permissible inference from the evidence, is final and must be sustained. Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824.

Of course there can be no valid claim that the employe's accidental death occurred at a place where his services as such workman were being performed. In the final analysis, decision depends upon whether the evidence or the permissible inferences therefrom support a finding that the employe's accidental death occurred at a place where his services required his presence as a part of his service and during the hours of his service as such workman.

The employer's liability for compensation is to be determined under the parts of the statute mentioned without the proviso in § 176.02 (§ 4272-1). The proviso was added to provide coverage where the employer *regularly* furnishes transportation to his employes to and from the place of employment after our decision to the contrary in Nesbitt v. Twin City F. & F. Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165. As we held in the Nesbitt and other cases, § 176.02 limits and restricts the operation of the words "arising out of and in the course of employment" by excluding liability for injuries which occur away from the employ-

er's premises and outside of the hours of service of employes or workmen. Gehrke v. Weiss, 204 Minn. 445, 284 N. W. 434; Kelley v. Northwest Paper Co. 190 Minn. 291, 251 N. W. 274; Otto v. Duluth St. Ry. Co. 138 Minn. 312, 164 N. W. 1020.

The words "out of" and "in the course of" are respectively requirements of cause or origin and of time and place of the injury. Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19. While we have refrained from adopting an inclusive definition of these terms, we have said that an injury is received in the course of employment "when it comes while the employe is doing his work" and that "it 'arises out of' the employment when it reasonably appears from all the facts and circumstances, that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury." Excluded are injuries which do not occur while the employe is engaged as workman in the employer's service or which are not caused by or spring from hazards incident to the employment. Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 292, 293, 297 N. W. 4, 6.

Decision in a particular case involves an application of the rules just stated. The questions always are: "Did the accident occur while the employe was serving his employer as a workman?" and "Is there causal connection between the employment and the injury?" An accidental injury to a workman who is employed to work at a specified place, as, for example, the employer's premises during specified hours, which occurs while he is returning on the public highways to his home after the completion of the day's work, does not arise out of and in the course of his employment. In such cases the accidental injury does not occur in, on, or about the premises where the employe's services are being performed or where his services require his presence at the time of injury or during the hours of his service as a workman. The injury does not arise out of the employment because there is no causal connection between the employment and the injury. The cause of such an injury is entirely unconnected with the employment. Such an injury does not arise in the course of the employment because,

when an employe is going home after the day's work, he is not engaged in performing any service for the employer as his workman; because he is not then subject to the employer's control; and because then the employe's time is his own to do with as he pleases. Koubek v. Gerens, 147 Minn. 366, 180 N. W. 219; Erickson v. St. Paul City Ry. Co. 141 Minn. 166, 169 N. W. 532; Otto v. Duluth St. Ry. Co. 138 Minn. 312, 164 N. W. 1020. Likewise, for the same reasons, an employe is not covered by the act for an injury when he is en route from his home to his place of work, Kelley v. Northwest Paper Co. 190 Minn. 291, 251 N. W. 274, *supra;* or on his way home for lunch, Simonds v. Reigel, 165 Minn. 458, 206 N. W. 717; or while he is at home for lunch, Jotich v. Village of Chisholm, 169 Minn. 428, 211 N. W. 579.

Respondent also invokes the rule that a traveling employe is covered by the act while he is on a homeward trip. The same rules are applicable to traveling as to other employes, but with different result, compelled by the fact that in such cases the travel is in performance of the employe's duty. Where an injury occurs to a traveling employe while engaged in travel for the prosecution of the employer's business, it arises out of and in the course of the employment. Austin v. Leonard, Crossett & Riley, Inc. 177 Minn. 503, 225 N. W. 428. In such cases the contract of employment, either in express terms or by necessary implication, contemplates that the employe shall perform his service by travel to such places and at such times as exigencies require, with the consequence that the employe's services are not required to be performed on the employer's premises, but wherever the employer's business requires the presence of the employe and that there are no fixed hours during which such performance is required, the time being determined by the actual prosecution of such business. A traveling employe is considered as carrying his working premises with him while engaged in the employer's service, Kelley v. Northwest Paper Co. 190 Minn. 291, 251 N. W. 274, *supra,* and his usual working hours are considered as those during which he is prosecuting his master's business, Johnson v. Crane Co. 210 Minn. 519, 299 N. W. 19.

In many of our cases the employe's home was also a place for the prosecution of the employer's business, from which his travel in the prosecution of such business commenced and at which such travel terminated. Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4, *supra;* State ex rel. McCarthy Brothers Co. v. District Court, 141 Minn. 61, 169 N. W. 274. In some cases the employe is held to be covered during travel either to or from his home, as where in an emergency he is called to render a special service for the employer. Nehring v. Minnesota Min. & Mfg. Co. 193 Minn. 169, 258 N. W. 307. In others he is held to be covered because the trip was made by direction of the employer to render a specific service for him. Fox v. Atwood-Larson Co. 203 Minn. 245, 280 N. W. 856.

Travel by an employe for his own purposes after working hours or in digression from the prosecution of the employer's business is not covered by the act. Lunde v. Congoleum-Nairn, Inc. 211 Minn. 487, 1 N. W. (2d) 606; Johnson v. Crane Co. 210 Minn. 519, 299 N. W. 19, *supra.*

In the instant case, the accidental death did not arise out of the employment because it occurred at a place other than the premises where the employe's service was being performed or where his service required his presence as a part of such service, and it did not arise in the course of the employment because it did not occur during the hours of service of such workman. The undisputed evidence is that the place of employment was the employer's substation at Tracy; that the time of service was specified as certain hours each day from Monday through Friday beginning at 8:00 a. m. and terminating at 4:30 or 5:00 p. m. depending on the length of the lunch hour, and that, except at such place and during such hours, the time was that of the employes to spend as they saw fit. The elaborate printed contract, consisting of a booklet of 23 printed pages, negotiated by the International Union, is explicit as to place, time, and conditions of service. The accidental death occurred at a point approximately 115 miles from the employer's substation, the place where the services of the workman

were required to be performed, and several hours after the time for the rendition of his services as such employe. At the time, the employe was not engaged in performing any service to the employer, but was engaged exclusively in purposes of his own, entirely commendable and praiseworthy, that of returning to his home to be with his family. Where, as here, an employe's services are required to be performed away from home at a specified place and during specified hours, an accidental injury occurring to the employe while engaged on a week-end trip to his home after completion of the week's work and while he is not performing a service by direction of his employer, does not arise out of and in the course of the employment. Milner v. Louisiana Highway Comm. 17 La. App. 28, 134 So. 441; Matter of Chetney v. H. A. Manning Co. 273 N. Y. 82, 6 N. E. (2d) 105; Burrows v. Industrial Comm. 58 Ohio App. 544, 16 N. E. (2d) 1003; Goldsworthy v. Ind. Comm. 212 Wis. 544, 250 N. W. 427. *Cf.* Hasslen v. Carlson & Hasslen, 180 Minn. 473, 231 N. W. 188, where it was assumed for purposes of decision that a week-end trip of the kind in question was not an incident of the employment unless it was made by the employer's direction in furtherance of the employment. Likewise, if such a week-end trip is taken to another city rather than to the employe's home, he is not covered. International Harv. Co. v. Industrial Board, 282 Ill. 489, 118 N. E. 711. Of course, if such a trip is undertaken to perform a specified service for the employer, as in Turner Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S. W. (2d) 490, relied on by respondent, the employe is within the act. But, for the reasons stated, absent such performance of service by means of the trip, he is not covered. *Cf.* Billiter, Miller & McClure v. Hickman, 247 Ky. 211, 56 S. W. (2d) 1003.

■ The week-end trips in question were not made an incident of the employment by custom because the employer knew that the employes took such trips and consented to an arrangement of the working hours during the week, with the approval of the union's steward, to enable the employes to start on such trips earlier than the regular quitting hour. The evidence shows that from time to

time over a period of years several such trips were made by employes with the employer's knowledge, and that in many instances, as here, the working hours were so arranged that on the day of departure the quitting hour was earlier than the regular time specified in the contract to enable the employes to start early. But in each instance the early departure was not pursuant to any well established course of conduct which the parties regarded as part of the contract by custom, but under special arrangement involving modification of the contract provisions relating to hours of employment.

Travel to and from work by an employe may be an incident of the employment where the contract of employment provides, expressly or by necessary implication, that the employment shall begin when the employe leaves his home to go to work and shall end when he returns to it (see Taylor v. M. A. Gammino Const. Co. 127 Conn. 528, 18 A. [2d] 400), for the reason, as we said in Nehring v. Minnesota Min. & Mfg. Co. 193 Minn. 169, 258 N. W. 307, 309, *supra*, quoting from Voehl v. Indemnity Ins. Co. 288 U. S. 162, 53 S. Ct. 380, 77 L. ed. 676, 87 A. L. R. 245: "While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere."

The evidence not only does not permit an inference that the early departure on week-end trips home was an incident of the contract of employment by custom, but compels a contrary one. The fact that in every instance where a special arrangement was made with respect to working hours to enable the employes to depart earlier than at the regular quitting hour the arrangement was made with the consent of the union steward, lest it involve a violation of the provisions of the contract between employer and the International Union relating to working hours, plainly shows that, unless the consent of the union steward to the arrangement was first obtained, the parties regarded any change in working hours to facilitate departure on such trips earlier than at the regular quitting time not as a matter of right under the contract by

custom, which they were free to follow, but as a violation of the contract.

The fact that the employer knows that the employe is in the habit of departing from his work for his home after work does not make the homeward trip an incident of the employment. This is true even where the employe uses a vehicle of the employer for transportation on such trips. In Rosvall v. City of Duluth, 177 Minn. 197, 224 N. W. 840, 841, for many years the employe, who was killed on a trip home after work, drove his own team and used either his own wagon or a dumpcart belonging to the city. When the accidental injury occurred he was using a city-owned dumpcart. In affirming a decision denying compensation, we said:

"If he had been sent for the wagon and had been injured when returning with it, or if he had kept the wagon at his home and stored and cared for it there *as a part of his service to the city,* a different finding might be suggested." (Italics supplied.)

Our decisions prior to the adoption of the proviso in § 176.02 (§ 4272-1), making the employer liable where he *regularly* furnishes transportation to his employes to and from the place of employment, clearly settled the construction of the words "arising out of and in the course of employment" as restricted by § 176.01, subd. 11 (§ 4326[j]) as not covering an employe while being transported to or from work pursuant to custom of which the employer has knowledge, except where the employer furnishes the transportation as part of the contract of employment. In Erickson v. St. Paul City Ry. Co. 141 Minn. 166, 169 N. W. 532, *supra,* an accidental injury to an employe of the present relator occurring while riding homeward on the employer's truck as a matter of custom, but not required of the employer as part of the contract of employment, was held not to arise out of and in the course of the employment. Likewise, in Otto v. Duluth St. Ry. Co. 138 Minn. 312, 164 N. W. 1020, *supra,* an accidental injury occurring to an employe was held not to have arisen out of and in the course of the employment where the employe was going home from work after quitting time in an automobile of the employer which by

custom he was permitted to drive, even though the employe was to return to work after dinner. In Nesbitt v. Twin City F. & F. Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165, *supra,* it was held that where the contract required the employer to furnish the transportation, but the employes were not required or directed to use it in going to and from work, an accidental injury occurring to an employe while being transported to work was not covered by the workmen's compensation act. The act was amended by the proviso in question to enlarge the employer's liability in the single instance where he *regularly* furnishes such transportation. Otherwise, the rule as it was prior to the adoption of the proviso still remains unaffected and in force. Gehrke v. Weiss, 204 Minn. 445, 284 N. W. 434. By changing the rule only in the respect covered by the proviso, the legislature by plain implication approved and adopted the rule except as it modified it by adding the proviso. The effect of the proviso is not to change the meaning of the words "arising out of and in the course of employment" as restricted, but to provide coverage where the employer *regularly* furnishes transportation to his employes to and from work. In a case where the transportation of the employe to and from work is not regularly furnished by the employer, but by the employe himself or a third person, the words have the same meaning as before the adoption of the proviso. Where the evidence fails to show, as it does here, that the parties intended that travel by an employe to or from his work before or after the regular working hours should be a part of the employment, an accidental injury to the employe during such travel does not arise out of and in the course of the employment, even though the employer knew that such travel was pursuant to the employe's custom. Rosvall v. City of Duluth, 177 Minn. 197, 224 N. W. 840, *supra.*

The case of Kerin v. Industrial Comm. 239 Wis. 617, 2 N. W. (2d) 223, is decisive against respondent. There the employe, an electrical worker, whose contract of employment, so far as here material, was substantially the same as that involved here, was required to work on a job at a distance from his home and was

allowed by his employer under the contract a stated sum for subsistence and expense while he was away from home, which the employe was free to expend as he chose and which with the employer's knowledge he used for the expense of daily commuting between his home and his work. In holding that the employe was not covered by the workmen's compensation act while on such trips, the court said (239 Wis. 624, 2 N. W. [2d] 226):

"In the instant case, after quitting time at 4:30 p. m., Kerin had nothing to do for his employer until he returned to work the following morning at 8 a. m. In the interim the employer had no control over Kerin as to his means ,of transportation to and from his work, or in any other respect."

And (239 Wis. 623, 2 N. W. [2d] 226):

"In the instant case the contract of employment, so far as here material, provides:

" 'When men are sent outside of the jurisdiction of the union, all transportation, board and lodging must be paid by the employer.'

"By no process of reasoning can this language be construed as an agreement on the part of the employer to actually transport the employee; and a mere additional daily allowance to the employee, which he is at liberty to use for board and room at his place of employment or for travel to and from work in the employee's car, does not extend the compensation act so as to cover the employee while commuting to and from his work."

In the final analysis, rearrangement of working hours so that the workday on Friday would terminate before the regular quitting time was all that the employer consented to. Travel to his home by an employe during and after such time was not in the course of his employment. Where an employe is permitted to leave before quitting time, an accident sustained by him after departure from the employer's premises does not occur during the hours of his service as an employe. His employment is terminated when he leaves the employer's premises the same as if the regular quitting time had arrived. Jotich v. Village of Chisholm, 169

Minn. 428, 211 N. W. 579, *supra.* An arrangement of working hours to enable an employe to depart earlier than the regular quitting hour does not make travel homeward by him after such departure a part of the employment. Fink v. Workmen's Compensation Bureau, 68 N. D. 531, 282 N. W. 505; Hopkins v. State Industrial Acc. Comm. 160 Or. 95, 83 P. (2d) 487.

As a matter of law, the trip in question was no part of the employe's employment, and his death did not arise out of and in the course of his employment.

Reversed.

[1]Reported in 6 N. W. (2d) 803.