FRANKLIN P. LEHN v. EINARD RONALD KLADT.
STATE TREASURER, CUSTODIAN OF
SPECIAL COMPENSATION FUND, RELATOR.

250 N. W. 2d 846.

February 4, 1977—No. 46822.

*Warren Spannaus*, Attorney General, and *Thomas G. Lockhart*, Special Assistant Attorney General, for relator.

*Nicklaus & Leatham* and *Robert A. Nicklaus*, for respondent.

PER CURIAM.

The state treasurer seeks review of an order of the Workers' Compensation Board awarding the employee, Franklin Lehn, benefits for temporary total and permanent partial disability.[1] The sole issue raised on appeal is whether the automobile accident which resulted in the employee's disability arose out of and in the course of employment. We affirm.

On February 21, 1974, the employee was injured en route to his home after a day's work when the automobile in which he was riding and operated by the employer was involved in a collision. The record indicates that for the period from January 5, 1974, until February 21, 1974,

[1] The special compensation fund is a party to this action as the employer was uninsured at the time of the injury. The fund is entitled to seek reimbursement from the employer pursuant to Minn. St. 176.185.

the date of the accident, the employer had regularly driven the employee to and from work and that this was the employee's sole mode of transportation to and from work during this period.

The board reviewed the conflicting testimony of the parties; the employee stated affirmatively that he considered the transportation so provided to be a part of his job, while the employer classified it merely as a gratuity. It concluded that the transportation was regularly furnished to insure that the employee was at work and that the injury was within the scope of employment.

We have repeatedly cited the general rule that an injury to an employee in going to or returning from the employer's premises where his employment duties are performed does not arise out of and in the course of his employment so as to be compensable under the act. Youngberg v. The Donlin Co. 264 Minn. 421, 119 N. W. 2d 746 (1963); Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. 2d 812 (1942). A statutory exception is found in Minn. St. 176.011, subd. 16, which in defining "personal injury" provides as follows:

"Where the employer regularly furnished transportation to his employees to and from the place of employment such employees are subject to this chapter while being so transported * * *."[2]

The credited testimony in this case sustains the finding that the furnishing of transportation to the employee was for the convenience and economic benefit of the employer. It had been the practice of the employer, at least for the period between January 5 and February 21, 1974; and on the day that the accident occurred, the employer had driven the employee to work at between 5:30 and 6 a. m. in the morning, working straight through the day until approximately 11 or 11:30 p. m., stopping for supper en route back to the employee's residence. The employee testified in part:

---

[2] This court has construed this provision as authorizing compensation where the employer furnishes transportation as an express or implied term of the employment contract. Radermacher v. St. Paul City Ry. Co. 214 Minn. 427, 8 N. W. 2d 466 (1943); Wiest v. Bolduc, 178 Minn. 310, 227 N. W. 48 (1929). However, coverage has been denied upon a finding that the employee was transported merely for his own convenience, as a permissive use and not as a matter of right under the employment contract. Bonfig v. Megarry Bros., Inc. 294 Minn. 180, 199 N. W. 2d 796 (1972); Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. 2d 812 (1942).

"Q. Okay. Now, prior to the accident, and on the day of the accident, how did you get to work?

"A. *Well, six weeks prior to the accident Doc had made the comment that if he didn't get me out of bed by at least 5:30, and down to work at 6:00, I'd never get out of the yard early enough to get the additional tonnage hauled that he thought should be hauled.*

"Q. So what arrangements did you make then as far as—

"A. I made no arrangements. Doc, he told me he was coming to pick me up in the morning and he'd bring me back home at night.

"Q. And did he, in fact, then come to pick you up in the morning?

"A. Yes, sir, he did.

"Q. Each and every morning?

"A. Every morning he was usually there by 5:30.

"Q. And then you'd jump in his car and he'd take you to work?

"A. Right.

"Q. And how did this work from a practical or mechanical standpoint of getting a jump on the loads?

"A. He got an economic boost financially."
(Italics supplied.)

A fellow employee at the salvage yard, Ray Booth, testified in this rather graphic language when asked if the employer had ever mentioned the transportation arrangement to him:

"And Frank was with him, and Doc says, yeah, he says—well, he says —at least he said, if I bring the son of a bitch to work I'll know he's here every day. It's just in them words."

There was no other testimony on this issue except that of the employer, which the commission was not bound to credit. Thus, the employee has sustained his burden of proof[3] and the decision of the board must be affirmed.

Respondent is allowed $350 attorneys fees.

Affirmed.

---

[3] The burden of establishing that transportation was regularly furnished as a condition of employment is upon the employee. Hardware Mutual Cas. Co. v. Ozmun, 217 Minn. 280, 14 N. W. 2d 351 (1944).