EDWARD L. GREEN, PETITIONER-RESPONDENT, v. BELL CLEANERS, RESPONDENT-APPELLANT.

JAMES E. WHITE, PETITIONER-RESPONDENT, v. BELL CLEANERS, RESPONDENT-APPELLANT.

Argued September 13, 1961—Decided October 23, 1961.

*Mr. Richard J. S. Barlow, Jr.,* argued the cause for the appellant (*Messrs. Lenox, Giordano & Lenox,* attorneys).

*Mr. Seymour B. Jacobs* argued the cause for the respondent (*Mr. David Roskein* and *Mr. Jacob L. Balk,* attorneys).

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Kilkenny in the Appellate Division.

WEINTRAUB, C. J. (concurring). I would affirm the judgment of the Appellate Division even if there were a deviation, but since I find none, I would affirm on the ground that petitioners did not depart from the course of their employment.

Doubtless because of the relatively remote location of respondent's place of business, the practice developed of furnishing transportation for its employees to and from work. The record shows respondent expressly authorized such transportation in some cases. Thus petitioner White was authorized to drive the truck to and from his home in Yardley, Pennsylvania, and was directed to take petitioner Green to and from Trenton where Green lived. Respondent's drivers regularly picked up other employees on the road.

On the day in question, White and Green, heading for home, came upon a coemployee, Lomax, who had missed the post bus and also the ride a third person usually gave him to his abode in Browns Mills. White undertook to take Lomax to Browns Mills and en route the accident occurred.

Respondent does not dispute or deny knowledge of the practice I have described, but says we should find it was limited to transportation along the routes the drivers would otherwise be pursuing. Browns Mills was not on the road White would regularly take to Yardley. Although the record shows Lomax had been driven home on some other occasions, respondent argues they were exceptional because on those occasions Lomax had worked to a late hour. Respondent offered no testimony that it in fact intended the restriction we are asked to find, and of course it at no time advised its drivers that transportation for coemployees must be so limited.

On these facts I cannot hold that White or Green departed from the course of employment. When an employer permits and indeed encourages a practice of furnishing transportation for employees to and from work, he should articulate a route limitation if he intends one. It is too much to expect an employee to find a restriction upon a careful analysis of prior events. Indeed, upon this record I am not satisfied that respondent in fact intended a restriction which it advances solely by way of argument and without the direct proof it alone could offer. At any rate an employer should expressly delineate the scope of employment if he wishes to hold the employee within one of several possible boundaries. When, as here, the employee reasonably and in good faith believes he is furthering his employment, he should not be adjudged to have strayed beyond it merely because someone could disagree with him.

A word about the drinking episode. It is not contended the injuries were due to intoxication and hence not compensable. The drinking is here relevant only upon the question whether petitioners were in the course of employ-

ment at the time of the accident. When Lomax was picked up, the purpose was to take him home, and the accident occurred while the parties were pursuing that purpose. The liquor affair has the capacity to distract, but it is no more significant here than it would be if a trip on the usual route to Yardley were similarly interrupted prior to an accident, and I take it that in that setting, no one would suggest a stop for some private reason would stamp the resumed trip to Yardley a personal venture unrelated to the employment.

FRANCIS, J., joins in this opinion.

PROCTOR, J. (dissenting). I cannot agree the employer, expressly or by implication, authorized White to drive the truck in a direction opposite the route to his destination. The extent of White's express authority is clear: he had specific permission to travel to and from his home in Yardley, Pa., and the plant at Fort Dix. Green lived along the way, and, upon his request, was given permission by the employer to ride to and from work with White. The employer also permitted the practice of its drivers' giving rides to coemployees if the latter were going in the same direction as the drivers. This practice, however, cannot be construed to sanction major deviations or trips in opposite directions to accommodate coemployees.

The majority relies upon the employer's conduct to expand White's authorization to include the trip to Browns Mills. But there is not the slightest indication of any such authority in White. On the contrary, all factors indicate the employer intended to keep its vehicles traveling in a reasonably direct route between Fort Dix and its drivers' homes. The testimony of White and Green is specific that the only accommodations sanctioned or acquiesced in were that a driver could "pick up any employee who was going in the same direction." It is true the employer did not expressly delineate White's route of travel. But I cannot infer from this the employer authorized White to drive employees home re-

gardless of where they lived, particularly where their homes were in an opposite direction from the route to Yardley.

The decision of the majority cannot be rationalized by calling this trip a minor deviation. When the collision occurred on the trip toward Browns Mills, White had traveled four to five miles in a direction completely opposite to the one approved. The approved route (Fort Dix to Yardley) was about twenty miles. The trip to Browns Mills and the return to the regular route would add another eight to ten miles. It appears to me that this is enough of a digression to indicate an abandonment of employment. And this is not a situation where the employee has completed his side-trip and is moving back toward his business route when injured. See *Larson, Workmen's Compensation Laws* § 19.33.

Much stress is laid upon the belief that White acted to further his employer's business interests. After Lomax got into the truck, White agreed to take him to Browns Mills "because I don't have anything in particular to do." He then drove to a liquor store in Wrightstown where the group bought some whiskey and sat in the truck drinking for a forty-five minute period. This clearly was not in furtherance of the employer's interest. White, Lomax and the Greens were enjoying each other's company as friends. It seems to me that White, as a friend of Lomax and not as an agent of their employer, undertook the trip to Browns Mills. The majority interprets White's transportation of Lomax to be beneficial to the employer, *i. e.*, an employee was being driven home, thereby easing the rigors of his job situation and making him a more contented employee. But that interpretation does not square with the facts. White's invitation to Lomax had only the faintest relation to the latter's employment or contentment as an employee. Lomax had quit work at 2:00 P. M., as usual on a Saturday afternoon. White picked him up around 3:30 P. M. After spending nearly an hour in the parked truck in front of the liquor store where the whiskey was bought, they set off for Lomax's home in Browns Mills. When they were near

Browns Mills the accident happened. In these circumstances, I cannot believe that White had the slightest notion he was furthering his employer's interests in taking Lomax home. And assuming White's act was of slight benefit to his employer, I cannot take the next step and conclude that every employee's act off the work premises which might, or which the employee thought might, possibly benefit the latter arises out of and in the course of the employment. This is particularly so when these acts are unknown to the employer. Compensation is almost universally denied in such situations, absent clear custom or acquiescence. See *Larson, supra,* § 27.15.

The fact that Lomax had previously been driven home by his coemployee, Freddie Newberry, is of no significance. Lomax had worked for this employer for ten years. Newberry was the only one who had ever driven him home, and then only on two or three occasions when Lomax worked late at the plant. Moreover, there is no evidence that the employer was aware of these trips. But assuming Newberry had authority, such isolated accommodations when an employee is working late cannot be construed to establish a pattern for providing the employee with transportation when he leaves work at the regular quitting time, as in the present case. The overtime work was in furtherance of the employer's business. These rides may have been an essential inducement to accomplish the employer's specific purpose. If White knew of these two or three rides, and there is no indication that he did, he must have known of the special circumstances surrounding them. If White did not know, these rides could not have influenced his action.

It is clear to me that White abandoned his work-connection when he undertook to drive Lomax home.

Green was an authorized passenger in the truck in the course of his employment until he became a party to White's unauthorized act. Green was an active participant in the drinking party. Indeed, he bought the bottle. Despite the fact he knew Browns Mills was in an opposite direction from

the route to Yardley, he acquiesced in taking Lomax home. Along with White, Green was engaged in enjoying Lomax's friendship and doing him a favor. Like White, Green had abandoned his employment and should not be able to look to his employer for compensation. See *Robinson v. Federal Telephone & Radio Corp.*, 44 *N. J. Super.* 294 (*App. Div.* 1957); *Cole v. Borough of Keansburg*, 17 *N. J. Misc.* 380 (*C. P.* 1939).

I would therefore reverse the judgment of the Appellate Division and affirm the judgment of the Burlington County Court. I am authorized to say that Justices HALL and HANEMAN join in this dissent.

WEINTRAUB, C. J., and FRANCIS, J., concurring in result.

*For affirmance on opinion below*—Chief Justice WEIN-TRAUB, and Justices JACOBS, FRANCIS and SCHETTINO—4.

*For reversal*—Justices PROCTOR, HALL and HANEMAN—3.