77 N.J. Super. 320 (1962)
186 A.2d 320
MITZI FILSON, PETITIONER-RESPONDENT,
v.
BELL TELEPHONE LABORATORIES INCORPORATED, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided November 26, 1962.
*321 Mr. Aaron Gordon argued the cause for respondent (Messrs. Hirschberg, Nashel, Zorn & Cronson, attorneys, Mr. Louis L. Cronson on the brief).
Mr. W. Clark Gaw argued the cause for appellant (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
WOOD, WM. FILLMORE, J.C.C.
This case comes before the court on appeal from the determination of the Division of Workmen's Compensation that petitioner's husband, Daniel *322 H. Filson, was employed by respondent at the time of his fatal accident, that the accident arose out of and in the course of that employment, and that the New Jersey Compensation Act is applicable to the case. The same issues are raised on this appeal.
It is well established that when a contract of employment is "made" in this State our compensation act applies even if the accident occurs outside the State. Gotkin v. Weinberg, 2 N.J. 305 (1949). Therefore the first inquiry by this court will be whether a contract of employment was consummated and, if so, whether it was consummated in New Jersey?
The evidence consists primarily of correspondence between decedent and respondent corporation. On February 7, 1960 decedent wrote respondent from Monterey, California, where he was employed as an assistant professor of physics at the United States Naval Postgraduate School, seeking a temporary position as a physicist for the summer months of that year. In the letter he indicated that he hoped ultimately (after termination of his Naval School employment, which he expected to last at least another academic year) to return to the New York area to live and that he intended to use the summer to acquaint himself with employment opportunities in that area. Respondent answered by letter of April 5, 1960, which (1) offered decedent temporary employment for a period of at least ten weeks, contingent upon his satisfactorily meeting respondent's physical requirements; (2) set forth specific terms as to salary and length of work week, and (3) agreed to reimburse decedent, upon his reporting for work, for his transportation expenses from Monterey to the place of employment in New Jersey and to pay decedent, upon termination of the employment, for the cost of transportation back to Monterey. Descedent was authorized to have a physical examination, at respondent's expense, by his own physician; and he was advised that upon receipt of the doctor's report, respondent would let him know the outcome. He was also advised that if the report was satisfactory, he would have *323 respondent's assurance of meeting its requirements when reporting for work, provided there were no unfavorable developments in the meantime. By letter of April 11, 1960 decedent accepted the above offer of employment and advised respondent that he would be available by the first of June. The next and final items of correspondence between respondent and decedent were two letters from respondent, dated April 18 and May 18, 1960, respectively. In the former respondent (1) acknowledged decedent's letter of April 11 and expressed its satisfaction with June 1 as the date for decedent to report for work; (2) instructed decedent to report directly to Mr. N.W. Smusyn, respondent's technical employment coordinator, so that the latter could "go through the formalities" of placing decedent on the payroll, and (3) forwarded to decedent "Qualification Record" and "Certificate of Non-Affiliation" forms and an instruction sheet indicating that the enclosed forms should be completed and returned promptly, and also indicating that certain other documents, such as birth and citizenship records, veteran's discharge papers and Social Security card, should be presented when reporting for work. The letter of May 18 advised decedent that the report of his physical examination had been received and found satisfactory. The concluding sentence of that letter read: "Consequently, the way is now clear for you to join us."
On May 21, 1960, while decedent was traveling with his family by car through Iowa en route to New Jersey to begin his work with respondent, the car skidded off the road. Decedent sustained fatal injuries in the upset.
Respondent contends that no employment contract had been consummated or, in the alternative, that the contract, if consummated at all, was completed in California. The first contention is based primarily upon the theory that the employee status was not to begin until certain further requirements, which allegedly had to be met at the time decedent reported for work, were satisfied. These so-called requirements were specified in the instruction sheet enclosed with *324 respondent's letter of April 18, 1960. However, the only thing that decedent was instructed by that sheet to do at the time of reporting was to produce the above mentioned birth and citizenship records, veteran's discharge papers, Social Security card, and similar documents. The producing of such documents was merely one of the "formalities" necessary for completing respondent's files and placing decedent on the payroll. Like the compensation judge, I find as a fact that a contract of employment was consummated by the above correspondence and that, in other words, the contract was not contingent upon the producing of those documents.
I now turn to respondent's alternative contention that the contract, if consummated at all, was made in California. The circumstance upon which respondent based this contention is that on April 21, 1960 decedent in California executed the above mentioned "Qualification Record," which contained the following printed statement immediately above decedent's signature:
"I accept the foregoing Terms and Conditions of Employment, and I certify that my statements in this application are true and correct to the best of my knowledge and belief."
The terms and conditions were that (1) any false statement, misrepresentation or concealment of pertinent information might be cause for dismissal; (2) the applicant must possess appropriate physical qualifications as determined by the physical examination, and (3) the applicant must execute an invention assignment agreement. Concededly, if the quoted statement could be construed as an acceptance of an unconditional offer of employment, it would be the final act in the making of the contract and the contract would have been made in California. A contract is made at the time and place when the last act necessary for its formation is done. Restatement, Contracts, sec. 74 (1932). However, the quoted statement cannot be so construed. In the first place, by its very terms the statement was merely an acceptance of the specified terms and conditions of employment, not of the *325 employment itself. Secondly and more importantly, the employment offer (which was contained in respondent's letter of April 5, 1960) was not an unconditional one. It was expressly made contingent upon decedent's ability to meet respondent's physical requirements satisfactorily. Although decedent accepted the offer by letter of April 11, 1960, prior to his execution of the "Qualification Record," such acceptance could not ripen into a binding contract until respondent had received the report of the physical examination and determined it to be satisfactory. That determination was made in New Jersey and, as previously indicated, decedent was notified of the determination by respondent's letter of May 18. In my view, this was the last step necessary for consummation of the contract. The above-quoted sentence from the last mentioned letter, to the effect that the way was now clear for decedent to join respondent's staff, indicates that respondent considered the contract complete when this step was taken. I therefore find that the contract was made in New Jersey.
The scheme of our Workmen's Compensation Act enters by operation of law into every contract of hiring made in this State unless there be an affirmative rejection of the plan. It is immaterial whether the accident occurs here or elsewhere. Gotkin v. Weinberg, supra.
The only remaining question is whether decedent suffered a compensable accident or, in other words, whether the accident arose out of and during the course of the employment. The general rule is that injuries suffered by a workman while going to or from work are not compensable. However, there are well-established exceptions to the rule, one of which applies to the situation where the employee is using transportation provided by the employer under the contract of employment. Injuries sustained by an employee while using transportation so provided are compensable. Nicolasi v. Sparagna, 135 N.J.L. 131 (E. & A. 1947); Mazzuchelli v. Silberberg, 29 N.J. 15, 25 (1959); Green v. Bell Cleaners, 65 N.J. Super. 311, 316 (App. Div. 1961), affirmed on the *326 Appellate Division opinion in 35 N.J. 596. Here, as we have seen, the agreement between the decedent and respondent called for the latter to provide transportation in both directions by payment of the cost thereof.
Prior New Jersey cases applying the above exception dealt with circumstances in which the employee had already begun his labors and in which he was, at the time of the accident, being transported between the place of his daily chores and his home nearby. However, there is nothing in the language or policy of those cases to suggest that the exception should be limited to such circumstances. In my view, the exception should apply equally to the circumstances here present, where the accident occurred at the time of the initial transfer from a distant point to the area of employment. The distance and expense of the trip from California to New Jersey were substantial; and respondent assumed the expense as an added inducement for decedent to come to New Jersey to work. Respondent's attorney, in his brief, argued that decedent's original letter of February 7, 1960 showed that he had the intention of coming to this area regardless of whether he obtained employment in advance. However, the letter is far from clear on this point; and respondent itself, by offering to pay the expense of transportation as an additional inducement, indicated that it did not interpret the letter as disclosing such an intention. It is true that decedent, in his original letter, stated that he did not expect a relocation allowance; but respondent nevertheless included transportation as an integral part of the bargain. This part of the bargain is not rendered less binding merely because respondent might have been able to obtain decedent's services without it. Whether necessary or not, the subject of transportation was singled out by respondent for special consideration. Under the circumstances the travel was an essential part of and was incidental to the services contracted to be performed. In other words, the employment included the trip. Larson, Workmen's Compensation Law, sec. 16.30. It follows that the accident arose out of and during the course *327 of the employment. It is immaterial that decedent was not being paid any salary for the period of transportation. Cf. Van Ness v. Borough of Haledon, 136 N.J.L. 623 (E. & A. 1947); Ryan v. St. Vincent de Paul Roman Catholic Church, 41 N.J. Super. 206 (App. Div. 1956).
Although the last discussed question is one of first impression in this State, the Supreme Court of Errors of Connecticut had a similar question before it over 30 years ago in the case of Scalia v. American Sumatra Tobacco Co., 93 Conn. 82, 105 A. 346 (1918). In that case two women were killed while riding in an automobile furnished by the defendant employer to transport them from Enfield, Connecticut, where they had just finished working as tobacco pickers on the plantation of another employer, to South Windsor in the same State, where they were to begin work in the same capacity at defendant's plantation. The women had been contacted on the preceding day in Enfield by defendant's agent and had been told by the agent that, if they wanted to work for the defendant, they should appear at a designated place to be transported to defendant's plantation. They reported to that place as instructed and were there picked up by a car engaged by the defendant. The fatal accident occurred while they were en route to defendant's premises. The court found that the transportation was a part of the contract of employment and, accordingly awarded compensation.
The judgment of the Workmen's Compensation Division is affirmed. An order may be submitted accordingly.