82 N.J. Super. 185 (1964)
197 A.2d 196
MITZI FILSON, PETITIONER-RESPONDENT,
v.
BELL TELEPHONE LABORATORIES, INCORPORATED, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1964.
Decided January 28, 1964.
*187 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. W. Clark Gaw argued the cause for appellant (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys; Mr. Gaw, of counsel).
Mr. Aaron Gordon argued the cause for respondent (Messrs. Hirschberg, Nashel, Zorn & Cronson, attorneys; Mr. Gordon, of counsel; Mr. Louis L. Cronson, on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
On May 21, 1960 Daniel Filson was fatally injured when the automobile in which he was riding with his wife and two infant children went out of control and turned over on Highway 92, three miles west of Winterset, Iowa. At the time Filson and his family were on their way from their home in Monterey, California, to New Jersey where he was to begin work on June 1, 1960 for Bell Telephone Laboratories, Incorporated (hereinafter "Bell") at its Murray Hill laboratories.
Mitzi Filson, the widow, filed a dependency claim petition with the New Jersey Division of Workmen's Compensation and, following a contested hearing therein, received an award of compensation for herself and the children. Bell appealed to the Union County Court, where the award of compensation was affirmed. Judge Wood's opinion is reported in 77 N.J. Super. 320 (Cty. Ct. 1962). Bell now prosecutes this appeal from the County Court judgment.
In its argument for reversal, Bell contends: (1) decedent was not in its employ at the time the accident occurred; (2) if employment status had been reached, New Jersey did not *188 have jurisdiction to award compensation benefits because the accident was in Iowa and the contract of employment was not "consummated" in New Jersey; and (3) assuming employee status, the fatal accident did not arise out of and in the course of decedent's employment.
We have made the required independent study and analysis of the evidence. Russo v. United States Trucking Corp., 26 N.J. 430, 435 (1958); Ricciardi v. Marcalus Mfg. Co., 26 N.J. 445, 447 (1958). Upon such total consideration of the record and the views expressed below, we believe that the judgment from which the appeal is taken, both in fact and the applicable law, is correct and should be affirmed.
No useful purpose would be served by reiterating Judge Wood's careful analysis and appraisal of the evidence from which he concluded that, as a result of the correspondence between them, a contract of employment had been entered into between decedent and Bell prior to the fatal accident. All of the material terms of the hiring had been agreed upon. The term of employment was ten weeks, commencing June 1, 1960. The hours were fixed at 37 1/2 over a five-day week. The salary was set at $870 per month. Decedent, whose qualifications were fully delineated in the letters exchanged and forms completed, was to serve as a member of Bell's technical staff at its Murray Hill laboratories. Decedent had, as required in Bell's April 5, 1960 written offer of employment, submitted to an examination by a doctor in California, the medical report had been forwarded to Bell in New Jersey, Bell had acknowledged receipt thereof by its letter of May 18, 1960, and therein Bell stated:
"* * * I am happy to tell you that it has been approved as satisfactory by our Medical Director. Consequently, the way is now clear for you to join us." (Emphasis ours)
The importance of this unrestricted declaration is apparent when note is taken of the statement in Bell's letter of April 5, 1960:
*189 "If it [the requested medical report] is satisfactory, you will have the assurance of meeting our requirements when you report for work, assuming no unfavorable development meantime." (Emphasis added)
The agreement also obligated Bell to reimburse Filson the "transportation expenses incurred in traveling from Monterey, California, to Whippany, New Jersey," together with reasonable expenses for meals, lodgings, and incidentals en route. It limited air flight expense to a "single one-way first-class airline fare, plus local transportation." It also provided: "Or, if you drive your personal automobile, you would be reimbursed at the rate of 8 1/2 cents per mile." Bell further agreed, "At the termination of your summer employment with us, we would make a payment of like character to cover your return transportation to Monterey." Bell took pains to recite in its offer of employment that no reimbursement would be made, however, "for the expenses incurred by members of your family who might be traveling with you."
We find no merit in Bell's contention that a contract of employment would not have come into existence until Filson actually reported at Bell's laboratories in New Jersey, was re-examined by its doctor in this State, produced birth and citizenship records, veteran's discharge papers, social security card and other documents requested in its instruction sheet, filled out other forms in New Jersey, and was then officially placed on the payroll. The letters exchanged specified no requirement that Filson must pass another physical examination in New Jersey. On the contrary, he was told that if Bell found satisfactory the medical report from California, "you will have the assurance of meeting our requirements when you report for work." The documents requested were mere formalities, as were any additional forms to be executed upon reporting for work in New Jersey.
Bell does not contend or even suggest that Filson would not have been able to furnish the requested papers. Bell's forms, already filled out in California and mailed back by Filson, evidenced his qualifications satisfactorily to Bell. He *190 stated therein that he was a citizen of the United States. He had been born on July 10, 1932. He attended elementary and high schools in New York City. He was graduated from Cornell University, with a B.A. in Physics, he had his M.S. in Physics from U.C.L.A., and had earned his Ph.D. in Physics also at U.C.L.A. At the time of his application to Bell, he was an Assistant Professor of Physics at the U.S. Naval Postgraduate School in Monterey, California, and had been so employed since 1959. The fact that Bell was willing to hire him as a technician in its laboratories and pay for his transportation from California to New Jersey, and back after ten weeks of employment, indicates that all of its material requirements had been met before it wrote to him on May 18, 1960 and stated, "Consequently, the way is now clear for you to join us."
Bell points to the statements in its offer of April 5, 1960 to the effect, "assuming no unfavorable development meantime." We regard this merely as the expression of a condition subsequent, upon the happening of which a contract already entered into could be terminated. There was no proof of such an unfavorable development, other than Filson's accidental death while on his way to fulfill his contractual obligation. This would excuse future performance by Bell but does not detract from the conclusion that a contract of employment between Bell and Filson existed at the time Filson met his untimely death as the result of this accident in the course of travel to the place of his new employment.
We also concur in the finding by Judge Wood that the contract of employment was made in New Jersey. We do so for the reasons expressed in his opinion. A contract is made at the place where the final act necessary for its formation is done. Restatement, Contracts, § 74 (1932); Northampton Mutual Live Stock Ins. Co. v. Tuttle, 40 N.J.L. 476, 479 (Sup. Ct. 1878). We deem that act to have been Bell's determination, in New Jersey, that the medical report of Filson's physical examination was satisfactory, and its mailing of its letter of May 18, 1960 from New Jersey, so *191 advising Filson and that "Consequently, the way is now clear for you to join us." Thus, our Division of Workmen's Compensation had the necessary jurisdiction to make an award because, under our workmen's compensation law, "when a contract of employment is made in this state it is immaterial whether the compensable accident occurs here or elsewhere." Gotkin v. Weinberg, 2 N.J. 305, 307 (1949).
The really crucial issue herein is whether it can properly be said that Filson's death was the result of an accident "arising out of and in the course of his employment," as required by R.S. 34:15-7. Filson had not yet begun to perform any services for Bell and was not due at Bell's laboratories in New Jersey until ten days later. He had not been paid any salary and, presumably, would not have received any until after commencement of work at Bell's laboratories. However, he was traveling along a public highway on his way across country and had completed about half the journey to the place of employment in New Jersey when the fatal happening occurred. He was using a means of transportation authorized by Bell and for which Bell had agreed to pay at the rate of 8 1/2 cents a mile. In other words, Bell was bringing this highly skilled technician from his home in California to its plant in New Jersey at its expense. The question, then, is whether the hired employee is within the ambit of his employment under such circumstances, during the course of his travel, so as to make the provisions of our workmen's compensation law applicable.
Ordinarily, an accident sustained by an employee during the course of travel between his home and place of employment is not compensable. This is sometimes referred to as the "going and coming" rule. Green v. Bell Cleaners, 65 N.J. Super. 311, 316 (App. Div. 1961), affirmed 35 N.J. 596 (1961). On the other hand, when the employer provides the employee with transportation when going to or returning from his work, injuries sustained by the employee during the course of such travel are considered as arising out of his employment. Ibid. In Green, the injured employees were being *192 transported in their employer's truck on their way homeward, when the accident occurred. It was held to be compensable. Compensability was similarly found on analogous facts in Alberta Contracting Corp. v. Santomassimo, 107 N.J.L. 7 (Sup. Ct. 1930). In accord with this general principle, see, too, Nicolasi v. Sparagna, 135 N.J.L. 131, 132 (E. & A. 1947).
Even when the employer's own vehicle is not used to transport the employee to and from work, but the employer nonetheless furnishes free transportation between the workmen's home and place of employment over some public carrier, an accident causing injury to or death of the employee during the course of travel is deemed to be one arising out of and during the course of employment and compensable. Thus, in Fisher v. Tidewater Building Co., 96 N.J.L. 103 (Sup. Ct. 1921), affirmed o.b. 97 N.J.L. 324 (E. & A. 1922), when a workman was killed some distance from the place of his employment, while boarding a train on which the employer furnished free transportation through the medium of tickets given by the employer to the employee for his transportation upon the railroad train, his widow was held entitled to an award of compensation. The court noted, 96 N.J.L., at p. 105, "* * * the Workmen's Compensation Statute is a remedial law of prime import and should be liberally construed."
The rule in the Fisher case was followed in Lehigh Navigation Coal Co. v. McGonnell, 120 N.J.L. 428 (Sup. Ct. 1938), affirmed o.b. 121 N.J.L. 583 (E. & A. 1939), in which the employee commuted from his home in Elizabethport, New Jersey, to his place of work in Jersey City, and the employee was reimbursed for the cost of commutation tickets purchased by him, pursuant to a promise by the employer to make reimbursement for this traveling expense. The employee was killed when he was struck by a train a short distance from the place where he would board the train which would take him to his place of employment. His death was held to be compensable under the liberal construction of the *193 remedial workmen's compensation law. The governing rule was stated as follows (120 N.J.L., at p. 429):
"* * * where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation, it is held to have arisen out of and in the course of the employment. This rule has the support of English and American cases."
Should it make any difference if the means of transportation is the employee's own vehicle, so long as the employer, as part of the contract of employment, has agreed to pay therefor, at a fixed rate per mile as in the instant case? We think not. One of the material terms of hiring herein and, perhaps, a substantial inducement for this young scientist, married and with a family, to travel more than 3,000 miles for ten weeks of employment, was the promise by Bell to pay his travel expense from California to New Jersey and also to reimburse him for a similar return trip to California. Bell gave Filson the option to travel by airplane, a public carrier, or to use his own automobile. It promised to pay the transportation expense no matter which vehicle was used. If the employer's own vehicle, or one hired by it, had been used to bring Filson to New Jersey and Filson had lost his life while traveling therein, the accident would be compensable. If a vehicle of a public carrier, such as an airplane or railroad train, had been used at the expense of the employer, and the accident happened during the travel, there would also be compensability, as noted in the above cases. There is no sound basis for a different result when the means of transportation, for the expense of which Bell similarly obligated itself to pay, is the employee's own automobile. In effect, Bell hired Filson's automobile at 8 1/2 cents a mile, as it might have hired a taxi to bring Filson east.
Bell relies upon several cases, holding an accident non-compensable where it occurs after the contract of hiring but prior to the time when the employee was to report for duty *194 and commence performance of his duties. But these cases are not apposite. They do not involve injury to or death of a hired employee while traveling to the place of employment at the employer's expense. For example, in Coco v. Wilbur, 104 N.J.L. 275 (Sup. Ct. 1928), Coco was engaged to pick cranberries in the bogs of Wilbur. He was to commence work on a Monday morning. He arrived on the preceding Saturday in the vicinity of the bogs and prepared a camp on land of Wilbur, in which to live with his family during the season for picking berries. At 3 P.M. on that Saturday he was shot by some unknown person and died. It was held that the accident was not compensable because it did not happen at the cranberry bogs where he had been engaged to work but "while he was engaged in his own pursuits."
The Coco case refers to Whitbread v. Arnold, 99 L.T.R. 103 (C.A. 1908), in which a man entered into a contract with a farmer to serve as a shepherd as from October 22, 1907. It was part of the contract that the farmer should send a wagon to the home of the shepherd to bring him and his family and their goods to their new home. While proceeding to their new home in this wagon, and about a distance of 40 yards from the cottage to be occupied, the wagon was suddenly jerked. The shepherd was thrown out and received fatal injuries. It was held that the death of the shepherd did not arise out of or in the course of employment, as his employment had not commenced. This decision supports Bell's view, but we do not regard it as good law at the present time in view of the liberal extension of workmen's compensation benefits since Whitbread v. Arnold was decided more than 50 years ago.
Bell cites The Linseed King - In re Spencer Kellogg & Sons, Inc., 48 F.2d 311 (S.D.N.Y. 1930). There a launch, the Linseed King, operated daily by Spencer Kellogg & Sons, Inc. to transport persons from the New York side of the Hudson River to the New Jersey side, sank and many lives were lost. Some of those aboard were employees of the company. Some others were on their way to look for work. *195 The question before the court was the applicability of the workmen's compensation law. It was held that the death of employees while being transported across the river on their way to work, in a launch operated by their employer, arose out of and in the course of their employment. This is in accord with the rule in Green v. Bell Cleaners, supra. As to the men being transported who had not yet become employees, had done no work and earned no compensation, they were not employees within the meaning of the workmen's compensation law. They were merely looking for work and anticipated being hired because they had reported the day before, but the ship to be unloaded had not yet arrived, and they were told to return the next day. The court found that, as to these, "the status of employer and employee had not yet come into existence, and the compensation statute does not apply to these cases." (at p. 319)
Bell quotes from State ex rel. Kusie v. Weber, 72 N.D. 705, 10 N.W.2d 741, 746 (Sup. Ct. 1943), in which the court said:
"One is not an employee within the purview of this statute if he has never been put to work. Until this happens, it can not be said the worker has been engaged in an employment. The statute does not say engaged for employment. * * * The term `engaged in an employment' means working, and one who has never worked, has never started to work, can not be said to be engaged in employment."
The North Dakota court was construing language peculiar to its own statute, namely, the meaning of the words "engaged in employment." In this case, Mrs. Kusie had been hired, but decided that she would return in the evening and then start work. She fell and was injured as she came that evening to the place of business. There was no provision for transportation between her home and place of employment or for the payment of her travel expenses. This decision does not make clear whether the hired employee was already on the employer's premises. If she were, the conclusion would not be in harmony with our view of the law. See 1 Larson, Workmen's Compensation Law, § 26.20; Warren's Case, 326 *196 Mass. 718, 97 N.E.2d 184 (Sup. Jud. Ct. 1951); Grube v. Associated Indemnity Corp., 187 F.2d 119 (5 Cir. 1951), allowing compensation when the hired employee was injured after reaching the place where he was to do his job but before actually commencing work.
As opposed to the cases cited by Bell, there is substantial authority sustaining the right to workmen's compensation benefits, when the hired employee is injured while traveling for the first time to and before he reaches the location where he is to perform his services, when the transportation is provided by the employer or to be paid for by him.
In Scalia v. American Sumatra Tobacco Co., 93 Conn. 82, 105 A. 346 (Sup. Ct. Err. 1918), compensation was awarded on the following facts: Two women had just finished working on the tobacco plantation of employer A. Employer B operated a similar plantation. B's agent contacted the two women and told them if they wanted to work for B, to meet on the following day at a designated place for transportation to B's plantation. The women appeared and during the course of the automobile ride to B's plantation they were involved in a fatal accident. The Supreme Court of Errors of Connecticut stated:
"Although the decedents, at the time of the accident had not actually commenced their work upon the tobacco plantation of the defendant company, it is plain that their transportation was a part of the contract of employment with this defendant. * * * The relation that then existed * * * was that of master and servant * * *. At the time they were injured they were laborers in the employ of the Tobacco Company." (105 A., at p. 347)
Phoenix Indemnity Company v. Willard, 130 F. Supp. 657 (S.D.N.Y. 1955), involved an action brought by a compensation carrier to vacate a compensation award made under the Defense Base Compensation Act, 42 U.S.C.A., §§ 1651-1654. The act prescribes compensation for an injury during transportation to or from place of employment where the employer pays for transportation. 42 U.S.C.A., § 1651. The injured workman had not previously worked for the employer *197 involved. About December 13, 1951 he entered into a contract of employment under which he was hired to work in Africa. The contract required him to take a physical examination and inoculations and to obtain a passport. On December 18, after having gone to New York to attend to the required processing and after having stopped for dinner, the workman was injured when he slipped on ice on his return to New Jersey where he was temporarily living. In denying the motion to vacate, the District Court said:
"Though it is true that during this preparatory period he had no specific work assignment, his processing was nonetheless an integral and indispensable part of his employment. The inoculations and the other steps in preparing him for overseas duties were essential requirements of his job qualification." (at p. 659)
The Supreme Court of Montana has recently had occasion to consider a case which is almost on all fours with the case at bar. In Guarascio v. Industrial Accident Board, 140 Mont. 497, 374 P.2d 84 (1962), one Guarascio, an itinerant terrazzo tile worker and resident of Salt Lake City, Utah, had been offered a job in Butte, Montana. The court, after considering the communications between the parties, found that an employment contract had been created under which Guarascio was to be paid for the expense of travel. While en route from Salt Lake City to Butte, Guarascio was killed in an automobile accident. In affirming an award of compensation the court found that Guarascio was carrying on the business of his employer by transporting himself to Montana.
Where the employee is required to make a journey to serve the employer's business interests, injury or death during the course of that journey is compensable. Thus, in Foley v. Home Rubber Co., 89 N.J.L. 474 (Sup. Ct. 1916), affirmed o.b. 91 N.J.L. 323 (E. & A. 1917), the employee, a special traveling salesman and manager of the European trade, was on the Lusitania on his way to visit the London office when the vessel was sunk by an enemy submarine and the employee lost his life. His death was held to be compensable *198 under our law. See, too, Robinson v. Federal Telephone & Radio Corp., 44 N.J. Super. 294 (App. Div. 1957). The journey in the instant case to bring Filson to the base of operations was as necessary as Foley's trip across the Atlantic. The fact that Filson was not being paid any wages during the period of travel and at the time of the accident is not material. Compare Ryan v. St. Vincent de Paul Roman Catholic Church, 41 N.J. Super. 206, 210 (App. Div. 1956); and Alberta Contracting Corp. v. Santomassimo, supra, 107 N.J.L., at p. 11.
Bell argues that Filson was driving east at the time of the accident in order to take up summer residence in New Jersey and not for the "primary purpose" of reporting for work, as evidenced by the fact that the fatality occurred ten days before Filson was due at Bell's laboratories. That Filson was on the road several days in advance is not material. It could not reasonably be expected that he would arrive in New Jersey no sooner than June 1 when he was due to report, or the day immediately prior. The same trip was necessary whether it was commenced one week or two weeks prior to the time for reporting. The conscientious worker would probably allow himself extra time for travel to meet unanticipated delays. The accident did happen during the course of the travel. His course of travel had not been specified by Bell. No contention has been made that his passage through Iowa was a material deviation to serve some personal purpose. Nor are we concerned herein with some accident, unrelated to the employment, which might have happened after Filson had arrived safely in New Jersey and during the interval between such arrival and the reporting date.
Furthermore, even if Filson's trip was for the dual purpose of being in New Jersey in time to perform his duties for Bell and also to serve some personal interest of himself or his family, the "dual purpose trip" doctrine would require an award of compensation. See 1 Larson, Workmen's Compensation Law, § 18.10, p. 240.
*199 As stated in Mazzuchelli v. Silberberg, 29 N.J. 15, 25 (1959):
"An employer can agree to furnish such transportation to an employee, who thereupon is protected by the Compensation Act during that travel."
Here, Bell agreed to furnish such transportation to Filson, by its agreement to reimburse him for the use of his automobile in effecting his movement from California to New Jersey. As Judge Wood aptly put it,
"In other words, the employment included the trip." Citing, Larson, Workmen's Compensation Law, § 16.30.
Accordingly, Filson was protected by our Compensation Act during that travel.
The judgment is affirmed.