**NORTH RIVER INSURANCE COMPANY, Appellant,**

**v.**

**John Ramey HUBBARD, Jr., et ux., Appellees.**

**No. 24448.**

United States Court of Appeals Fifth Circuit.

March 19, 1968.

John E. Gunter, Midland, Tex., Rassman, Gunter & Boldrick, Midland, Tex., of counsel, for appellant.

Warren Burnett, Robert E. Hoblit, Odessa, Tex., for appellees.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

Again we consider whether for purposes of workmen's compensation an employee was injured "in the course of employment." Specifically, was John Ramey Hubbard, III acting "in the course of employment" when he was killed in an automobile accident while driving from his former home in Albuquerque, New Mexico, to Midland, Texas, in order to establish a residence and to work for the McClatchy Cleaners in Midland? The trial court overruled the appellant's motion for a directed verdict and submitted this question to a jury. After the jury had answered in the affirmative, the trial court overruled the appellant's motion for a judgment notwithstanding the verdict and awarded recovery to the Hubbard family. The appellant claims error in the trial court's actions. Having correlated the facts of this case with the Texas Workmen's Compensation Law—and having borrowed one case from the jurisprudence of a sister state[1]—we affirm.

The McClatchy Cleaners was owned by Mrs. Mary C. Nelson, whose daughter Mary Jo was young Hubbard's fiancée. In the early part of December, 1964, John was dismissed from his job in Albuquerque. Mrs. Nelson mentioned to John that she was having trouble with her route salesman and that she would like him to work for her. She also sent him $100 to "get some clothes and fix his car" in addition to a $25 Christmas gift. On January 22, 1965, the Friday evening before John's death, Mrs. Nelson talked with John and John's mother, and all agreed that John would become a route salesman for McClatchy Cleaners and that he would leave for Midland as soon as his car was ready for the trip. The following testimony by John's mother relates her version of the conversation: [2]

"Well, I asked Mrs. Nelson, as I knew her then [Mrs. Nelson had remarried by the time of the trial], what would be going on down here about his salary and how he would work. She told me he was hired from *the time he left Albuquerque;* that she would pay him $100.00 a week and she said the $100.00 she advanced to him to buy him some clothes and fix his car would have to be paid back, but that was an advancement on his salary and that is what I understood it to be.

\*    \*    \*    \*    \*    \*

"He [John] said if he got his car out of the shop—he got it out of the paint shop Sunday night—he would leave Monday.

\*    \*    \*    \*    \*    \*

"She told him that she would like to have him there *as soon as possible,* but *no later than Wednesday.*" (Emphasis added.)

At trial Mrs. Nelson, who quite obviously had become disenchanted with the Hubbards because of the litigation, denied that Hubbard was to be "hired" before he arrived in Midland. She, nevertheless, admitted that Hubbard was to replace a route salesman who was "driving me crazy" and that "in all probability" she would have paid Hubbard a full week's salary on the Saturday following his arrival.

Without doubt, in our Circuit the sufficiency of evidence for jury submission is measured by federal standards even in diversity cases. Cater v. Gordon Transport, Inc., 5 Cir. 1968, 390 F.2d 44; Planters Manuf. Co. v. Protection Mut. Ins. Co., 5 Cir. 1967, 380 F.2d 869, 871, cert. den., 389 U.S. 930, 88 S.Ct. 293, 19 L.Ed.2d 282; Revlon Inc. v. Buchanan, 5 Cir. 1959, 271 F.2d 795, 800, 81 A.L.R.2d 222. Our court has in recent years discussed the quantum and quality of evidence which justifies the submission of a case to the

1. Filson v. Bell Tel. Labs., Inc., Super.Ct. N.J., App.Div.1964, 82 N.J.Super. 185, 197 A.2d 196.

2. Because the Hubbards had an extension phone, Mrs. Hubbard and John each participated in the same conversation with Mrs. Nelson.

jury. Compare Boeing Co. v. Shipman, 389 F.2d 507; 5 Cir. January 11, 1968, and Planters Manuf. Co. v. Protection Mut. Ins. Co., supra, with Cater v. Gordon Transport, Inc., supra; Isaacs v. American Petrofina, 5 Cir. 1966, 368 F.2d 193, 195–96; Employers Mut. Cas. Co. v. Mosqueda, 5 Cir. 1963, 317 F.2d 609, 613.[3] Even the formulations advanced by the latter, more restrictive cases, however, entitle the appellees in this case to a jury evaluation. Therefore, we can reverse only if, as a matter of law, Hubbard could not have been "in the course of employment" while on a public highway between Albuquerque and Midland. The jury is the weigher of facts; we must determine whether the facts were too nebulous to weigh.

Our statutory guides are Tex.Rev.Civ. Stat. Art. 8309, Sec. 1 and Art. 8309, Sec. 1b. Section 1 contains Texas' general definition of an "injury sustained in the course of employment" :

"The term 'injury sustained in the course of employment,' as used in this Act, * * * shall include all other [referring to four exceptions not relevant here] injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

Section 1b was enacted in 1957 to lend statutory assistance to the increasing case law on employee travel:

"Transportation or travel as basis for claim for injury

Sec. 1b. Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

■ The judicial tests under Section 1 have remained constant for more than forty years. To recover for an injury, the employee must show two factors: (1) that at the time of injury he was engaged *in or about the furtherance* of his employer's affairs or business and (2) that the injury was of a kind and character that *had to do with and originated in* the employer's work, business, trade or profession. Shelton v. Standard Ins. Co., Tex.1965, 389 S.W. 290, 292 (at [2]); Texas General Indemnity Co. v. Bottom, Tex.1963, 365 S.W.2d 350, 352–353 (at [1]); Smith v. Texas Employer's Ins. Ass'n, Tex.Comm'n App. 1937, 129 Tex. 573, 105 S.W.2d 192, 193 (at [1]) (opinion adopted by Tex.Sup. Ct.); Texas Indemnity Ins. Co. v. Clark, Tex.Comm'n App.1935, 125 Tex. 96, 81 S.W.2d 67, 69 (at [2]) (opinion adopted by Tex.Sup.Ct.); Aetna Life Ins. Co. v. Burnett, Tex.Conn'n App.1926, 283 S.W. 783, 784 (at [1]) (opinion adopted by Tex.Sup.Ct.); Liberty Mut. Ins. Co.

---

3. The Boeing Co. v. Shipman, supra, has been set for rehearing en banc. We do not pause to parse the various submission theories, however, because as we view the supporting evidence here, submission was required under all of these cases.

v. Preston, Tex.Civ.App.1966, 399 S.W. 2d 367, 372 (at [10]), error ref., n. r. e.

We view Section 1b as a reconciliation of the Section 1 tests with the special problems of travel risks. In Texas, as in all jurisdictions, the two following common law rules of compensation have proven to be less than harmonious: (1) Injuries received while using the public highways in going to and coming from work are not compensable under workmen's compensation acts because all members of the traveling public take such risks. Texas General Indemnity Co. v. Bottom, supra, 365 S.W.2d at 353, (2) Workmen's compensation statutes should be construed liberally to carry out their evident purpose. Shelton v. Standard Ins. Co., supra, 389 S.W.2d at 293. In 1953 the Texas Legislature seemingly saw in the general terms of Section 1 and in the above two philosophical guides a potential for misuse of interpretative imagination, whether in awarding recovery or in denying it. Thus, they enacted Section 1b to restrict judicial analysis to travel-oriented standards.[4] The Texas Supreme Court has stated, Section 1b "circumscribe[s] the probative effect that might be given to the means of transportation or the purpose of the journey." Texas General Indemnity Co. v. Bottom, Tex.1963, 365 S.W.2d 350, 353. That Court's analysis of Section 1b requirements was stated by Chief Justice Calvert in Janak v. Texas Emp. Ins. Ass'n, Tex.1964, 381 S.W.2d 176, 179:

"Sec. 1b, Article 8309, enacted in 1957, has two parts. The first part declares injuries during travel to be in the course of employment, and therefore compensable, only when transportation is (1) furnished as a part of the contract of employment, or (2) is paid for by the employer, or (3) is under the control of the employer, or (4) when 'the employee is directed in his employment to proceed from one place to another place.' The second part deals with the 'dual purpose' rule. It declares that injuries occurring during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment, and therefore compensable, 'unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip.'"

This analysis was quoted in part in Agricultural Ins. Co. v. Dryden, Tex. 1965, 398 S.W.2d 745, 746. See also Liberty Mutual Ins. Co. v. Preston, Tex. Civ.App.1966, 399 S.W.2d 367, 371–372, error ref., n. r. e.

We proceed to the first part of 1b, which we view as a refinement of Section 1's requirement that the injury must have to do with and originate in the employer's work, business, trade or profession. The fourth alternative, as quoted above, becomes operative when "the employee is *directed in his employment* to proceed from one place to another place." Without doubt Hubbard was *directed* by Mrs. Nelson to report to work in Midland. As reported by Mrs. Hubbard, he was directed to report "as soon as possible, but no later than Wednesday." (See Janak v. Texas Emp. Ins. Ass'n, Tex.1964, 381 S.W.2d 176, 181, which regards an implied direction as sufficient.) The determinative issue, then, is whether Hubbard was directed *in his employment.*

4. In Agricultural Ins. Co. v. Dryden, Tex. 1965, 398 S.W.2d 745, 747, the Texas Supreme Court indicated that Section 1b may have limited the jury's authority to award recovery more than had been indicated in certain pre-1957 opinions of that court. On the other hand, at least one writer has stated that Section 1b has liberalized recovery when the employee is compensated for his travel. Watson, "To and From Work—Compensable?" 27 Texas B.J. 865 (1964).

Normally the manner of employee ingress and egress to the work site is marked by employer indifference. This is true even when an employee is "directed" to report to work at a certain time each day. But Hubbard was not routinely going to and from work as one does daily. Nor was he driving to Midland at his own leisure. The urgency of Mrs. Nelson's request and her conversation with the Hubbards indicating that John would commence his employment when he left Albuquerque places Hubbard's travel in the "special mission" exceptions of travel risks commonly recognized in Texas law.

Texas courts have consistently viewed "employment" as a concept broader than the chores listed in a routine work day. In Hartford Accident & Indemnity Co. v. Bond, Tex.Civ.App.1946, 199 S.W.2d 293, error ref., n. r. e., for example, a court of civil appeals awarded recovery when an oil well roustabout was fatally injured while returning from the home of his immediate superior, twenty-five miles away from the work site. He had driven to the latter's home to report that he was sick and would not work that day. The court reasoned that because the employee had been directed to report his prospective absences, he was "in the course of employment" (even though the evidence suggested that he had been fired while at his supervisor's house). See also Janak v. Texas Employer's Ins. Ass'n, supra, in which an oil well employee was allowed to recover for an injury received while he was driving to obtain ice for the drinking water.

The above cases, although not on all fours with the one at bar, do indicate a trend of awarding compensation when job-related directives precipitated an injury. An ancillary extension of the concept of "employment" can be seen in Shelton v. Standard Ins. Co., Tex.1965, 389 S.W.2d 290, where the Texas Supreme Court allowed recovery to a truck driver who, after stopping at a motel for the night, was injured while crossing the street towards a restaurant. Two years later a court of civil appeals cited Shelton in allowing recovery to a truck driver who had stopped at the scene of an accident and had been injured while attempting to render aid. Texas Employer's Ins. Ass'n v. Thomas, Tex.Civ.App.1967, 415 S.W.2d 18.

We have found closer fact situations in cases arising under the Federal Tort Claims Act in which "the course of employment" determines the government's liability. In Hinson v. United States, 5 Cir. 1958, 257 F.2d 178, we held that an Army Medical Officer, then en route in his own automobile from his home in Virginia to his *first* duty assignment in Texas, was in the scope of employment when his car collided with Mr. Hinson's car on a Georgia highway. We stated in part:

> "The battle lines here drawn on scope of employment separate the camps into the question in its simplest most graphic form: was Capt. Westcott 'going to work' or was he then already 'at work' in making his way to Texas? The total circumstances under Georgia law compel the latter view.
>
> \* \* \*
>
> "Thus it is controlling that at the time of this collision, Capt. Westcott was performing a specific duty which had been assigned him—to *travel* to Fort Sam Houston. In executing this order to *proceed,* he made use of his private automobile with the express authority of the Army. For this the Army bore the expenses which were 'necessary in the military service.' In so doing he was not going to work, he was then engaged in the performance of one of the very duties specifically assigned to him, receiving Army pay, subject to military discipline and not on leave. His only choice was the immaterial one of route and means of travel." 257 F.2d at 181, 182.

See also Cooner v. United States, 4 Cir. 1960, 276 F.2d 220; United States v. Mraz, 10 Cir. 1958; 255 F.2d 115; Manderacchi v. United States, D.C.Md.1967, 264 F.Supp. 380; Courtright v. Pittman, D.C.Colo.1967, 264 F.Supp. 114; Farmer

v. United States, S.D.Iowa 1966, 261 F. Supp. 750.

The above decisions concerning the government's liability for acts of its agents have increasing importance for the issue in this case when we note the following pronouncement by the Texas Supreme Court: "It could not be seriously contended that petitioner, while crossing the street, was in the scope of his employment for establishing liability under the doctrine of respondeat superior, but our Workmen's Compensation Act must be given a liberal construction to carry out its evident purpose." Shelton v. Standard Ins. Co., supra, 389 S.W. 2d at 293. We refer also to that Court's favorable mention of one commentator's attack on the rigidities of the "going and coming rule." See Janak v. Texas Employer's Ins. Ass'n, supra, 381 S.W.2d at 179, quoting from and citing Horovitz, "Workmen's Compensation: Half Century of Judicial Developments," 41 Nebraska L.Rev. 1 (1961).

In 1964 a New Jersey court decided a case whose facts and issues closely resemble those presently before us. Daniel Filson, a resident of California, had agreed to work during the summer month for Bell Telephone Laboratories, Incorporated, at its Murray Hill laboratories in New Jersey. While en route, Filson was fatally injured in an automobile collision in Winterset, Iowa. The court awarded recovery after analyzing in depth "the really crucial issue," whether "Filson's death was the result of an accident 'arising out of and in the course of his employment' as required by [New Jersey workmen's compensation laws]." Filson v. Bell Tel. Lab. Inc., Super.Ct.N.J., App.Div.1964, 82 N.J. Super. 185, 197 A.2d 196, 199–203. See Note, 20 Rutgers L.Rev. 599, 615 (1966).

The New Jersey court in *Filson* drew exception to the "going and coming" rule mainly from Bell's agreement to reimburse Filson for his travel expenses. In Texas, the employer's payment for travel and the employer's direction of travel are equal alternatives under Section 1b. Thus, we find similar grounds to except when, as here, the employee is directed to travel immediately and his compensation is to begin at the moment of departure.

Our discussion of the first part of Section 1b has left little question as to the second part, whether Hubbard's actions were done in the furtherance of Mrs. Nelson's interests. There is no doubt that the trip from Albuquerque to Midland was McClatchy oriented. John may have taken the job for the furtherance of love, but his rush to Midland was ordered by Mrs. Nelson, not by Mary Jo. These facts fall well within the Texas Supreme Court's recent discussion of the "dual purpose" doctrine. Janak v. Texas Employer's Ins. Ass'n, supra.

■ This is not a going-to or coming-from case in the traditional mold. It is a case involving a travel risk which a jury may or may not find to be in the course of employment. Because employment contracts are not normally formalized as contracts under seal, the jury's role is considerable. We conclude that in this case the jury could properly find from the evidence that John's travel was taken pursuant to a contractual obligation.

In 1931 a court of civil appeals allowed recovery to an employee who, after receiving orders on a special business telephone maintained in his home, turned from the telephone and set foot on a needle. Security Union Ins. Co. v. McClurkin, Tex.Civ.App.1931, 35 S.W.2d 240, error ref. More than twenty years later *McClurkin* was distinguished in 1955 when a court denied recovery to an employee who had fallen off a ladder *before* he could get to the telephone and thus *before* he could receive his orders. Loyd v. Texas Emp. Ins. Ass'n, Tex.Civ. App.1955, 280 S.W.2d 955. We cite the *McClurkin* decision as relevant because in the case at bar Hubbard not only had received his orders before his injury but also had "set foot" on his special mission.

Affirmed.